# Exhibit 2

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------- X
CLAUDIA COJOCARU and NAOMI HABER,
Plaintiffs,                                             19-cv-5428 (AKH)

v.                                                      **DEFENDANT CURTIS'S ANSWER**
                                                       **TO AMENDED COMPLAINT**
                                                       **AND COUNTERCLAIMS**
CITY UNIVERSITY OF NEW YORK d/b/a JOHN
JAY COLLEGE OF CRIMINAL JUSTICE, RIC
CURTIS, ANTHONY MARCUS, LEONARDO                       **Jury Trial Demanded**
DOMINGUEZ and BARRY SPUNT, all in their
individual and professional capacities,
Defendants.
------------------------------------------------------------- X

## ANSWER

Defendant Ric Curtis ("Defendant"), by his attorneys, HERBST LAW PLLC, for his

Answer to the Amended Complaint of Plaintiffs Claudia Cojocaru and Naomi Haber ("Plaintiffs")

state as follows:

## GENERAL DENIAL

Except as otherwise expressly recognized herein, Defendant denies each and every

allegation contained in the Amended Complaint, including without limitation, any allegations

contained in the preamble, headings or subheadings of the Amended Complaint, and specifically

denies any liability to Plaintiff.  Pursuant to Rule 8(d) of the Federal Rules of Civil Procedure,

averments in the Amended Complaint to which no responsive pleading is required shall be deemed

denied.  Defendant expressly reserves the right to seek to amend and/or supplement his Answer as

may be necessary.

**ANSWER TO SPECIFIC ALLEGATIONS IN PLAINTIFFS' AMENDED COMPLAINT**

Defendant states as follows in response to the specific allegations of the Amended Complaint:

**ANSWER TO "PRELIMINARY STATEMENT" ALLEGATIONS**

1.      To the extent the allegations of Paragraph 1 state legal conclusions, no response is required.  To the extent a response is required, Defendant denies the allegations of paragraph 1, except admits that the John Jay College web site contains the language quoted in the first sentence.

2.      Defendant denies the allegations of paragraph 2.

3.      Defendant denies the allegations of paragraph 3.

4.      To the extent the allegations of paragraph 4 state legal conclusions, no response is required.  To the extent a response is required, Defendant denies the allegations of paragraph 4.

5.      To the extent the allegations of paragraph 5 state legal conclusions, no response is required.  To the extent a response is required, Defendant denies the allegations of paragraph 5.

6.      Defendant denies the allegations of paragraph 6.

7.      Defendant admits that Cojocaru and Haber apparently filed formal complaints, and that the investigation(s) conducted by the College and CUNY was biased, lacking in due process and intended to protect the institution rather than *Defendant's* rights (not plaintiffs' rights).  Defendant denies the remaining allegations of paragraph 7.

8.      Defendant denies the allegations of paragraph 8.

9.      To the extent the allegations of paragraph 9 state legal conclusions, no response is required.  To the extent a response is required, Defendant denies the allegations of paragraph 9.

**RESPONSE TO "ADMINISTRATIVE PROCEDURES" ALLEGATIONS**

10.      To the extent the allegations of paragraph 10 state legal conclusions, no response is required.  To the extent a response is required, Defendant is without knowledge and information

sufficient to form a belief as to the truth of the allegations of paragraph 10, and therefore denies
them.

11.      To the extent the allegations of paragraph 11 state legal conclusions, no response is
required.  To the extent a response is required, Defendant is without knowledge and information
sufficient to form a belief as to the truth of the allegations of paragraph 11, and therefore denies
them.

12.      To the extent the allegations of paragraph 12 state legal conclusions, no response is
required.  To the extent a response is required, Defendant is without knowledge and information
sufficient to form a belief as to the truth of the allegations of paragraph 12, and therefore denies
them.

13.      To the extent the allegations of paragraph 13 state legal conclusions, no response is
required.  To the extent a response is required, Defendant is without knowledge and information
sufficient to form a belief as to the truth of the allegations of paragraph 13, and therefore denies
them.

## ANSWER TO "JURISDICTION AND VENUE" ALLEGATIONS

14.      Paragraph 14 contains allegations of jurisdiction for which no response is required.

15.      Paragraph 15 contains allegations of venue for which no response is required.

## ANSWER TO "PARTIES" ALLEGATIONS

16.      Defendant is without sufficient knowledge and information to form a belief as to the
truth of the allegations of paragraph 16, and therefore denies them, except to admit that Plaintiff
Cojocaru is approximately 40 years old and was formerly a student and adjunct professor at John
Jay.

17.     Defendant is without sufficient knowledge and information to form a belief as to the truth of the allegations of paragraph 17, and therefore denies them, except to admit that Plaintiff Haber is approximately 25 years old and is a citizen of the United States and a former student at John Jay.

18.     To the extent the allegations of paragraph 18 state legal conclusions, no response is required.  To the extent a response is required, Defendant admits that defendant CUNY is a public university formed pursuant to the laws of the State of New York.

19.     Defendant admits the allegations of paragraph 19.

20.     Defendant is without knowledge and information sufficient to form a belief as to the truth of the allegations of paragraph 20, and therefore denies them, except to admit that defendant Marcus is a John Jay professor of Anthropology and is or was the Department Chair.

21.     Defendant is without knowledge and information sufficient to form a belief as to the truth of the allegations of paragraph 21, and therefore denies them, except admits that defendant Dominguez has worked at John Jay as an adjunct professor.

22.     Defendant is without knowledge and information sufficient to form a belief as to the truth of the allegations of paragraph 22, and therefore denies them, except admits that defendant Spunt is an Associate Professor of Sociology at John Jay, has worked there for many years, holds a Ph.D. from Fordham, has conducted several studies, has taught numerous courses, and has previously served as Chair and Deputy Chair of the Sociology Department.

### ANSWERS TO THE "FACTUAL ALLEGATIONS" ALLEGATIONS

23.     Defendant denies the allegations of paragraph 23.

24.     Defendant denies the allegations of paragraph 24, except admits that Ms. Cojocaru is a published author.

25.     Defendant admits the allegations of paragraph 25.

26.     Defendant is without knowledge and information sufficient to form a belief as to the truth of the allegations of paragraph 26, and therefore denies them.

27.     Defendant is without knowledge and information sufficient to form a belief as to the truth of the allegations of paragraph 27, and therefore denies them.

28.     Defendant is without knowledge and information sufficient to form a belief as to the truth of the allegations of paragraph 28, and therefore denies them.

29.     Defendant is without knowledge and information sufficient to form a belief as to the truth of the allegations of paragraph 29, and therefore denies them.

30.     Defendant is without knowledge and information sufficient to form a belief as to the truth of the allegations of paragraph 30, and therefore denies them.

31.     Defendant is without knowledge and information sufficient to form a belief as to the truth of the allegations of paragraph 31, and therefore denies them.

32.     Defendant is without knowledge and information sufficient to form a belief as to the truth of the allegations of paragraph 32, and therefore denies them.

33.     Defendant is without knowledge and information sufficient to form a belief as to the truth of the allegations of paragraph 33, and therefore denies them.

34.     Defendant is without knowledge and information sufficient to form a belief as to the truth of the allegations of paragraph 34, and therefore denies them.

35.     Defendant is without knowledge and information sufficient to form a belief as to the truth of the allegations of paragraph 35, and therefore denies them.

36.     Defendant is without knowledge and information sufficient to form a belief as to the truth of the allegations of paragraph 36, and therefore denies them.

37.     Defendant is without knowledge and information sufficient to form a belief as to the truth of the allegations of paragraph 37, and therefore denies them.

38.     Defendant is without knowledge and information sufficient to form a belief as to the truth of the allegations of paragraph 38, and therefore denies them.

39.     Defendant is without knowledge and information sufficient to form a belief as to the truth of the allegations of paragraph 39, and therefore denies them.

40.     Defendant is without knowledge and information sufficient to form a belief as to the truth of the allegations of paragraph 40, and therefore denies them.

41.     Defendant is without knowledge and information sufficient to form a belief as to the truth of the allegations of paragraph 41, and therefore denies them.

42.     Defendant is without knowledge and information sufficient to form a belief as to the truth of the allegations of paragraph 42, and therefore denies them.

43.     Defendant is without knowledge and information sufficient to form a belief as to the truth of the allegations of paragraph 43, and therefore denies them.

44.     Defendant is without knowledge and information sufficient to form a belief as to the truth of the allegations of paragraph 44, and therefore denies them.

45.     Defendant is without knowledge and information sufficient to form a belief as to the truth of the allegations of paragraph 45, and therefore denies them.

46.     Defendant is without knowledge and information sufficient to form a belief as to the truth of the allegations of paragraph 46, and therefore denies them, except admits that he was recognized as a leader in the field of human sex trafficking.

47.     Defendant denies that Ms. Cojocaru received an angry call from Mr. Curtis, and is without knowledge and information sufficient to form a belief as to the truth of the remaining

allegations of paragraph 47, and therefore denies them, except admits that Defendant had a cubicle-office on the seventh floor of John Jay's Annex Building, in an area which was occasionally referred to by some as the Swamp.

48.     Defendant denies the allegations of paragraph 48.

49.     Defendant denies the allegations of paragraph 49.

50.     Defendant denies the allegations of paragraph 50.

51.     Defendant denies the allegations of paragraph 51.

52.     Defendant is without knowledge and information sufficient to form a belief as to the truth of the allegations of paragraph 52, and therefore denies them.

53.     Defendant denies the allegations of paragraph 53.

54.     Defendant denies the allegations of paragraph 54, except admits that Defendant wrote the 10 words quoted therein.

55.     To the extent they apply to him, Defendant denies the allegations of paragraph 55, except admits that Defendant wrote the penultimate quoted words therein.

56.     To the extend they apply to him, Defendant denies the allegations of paragraph 56.

57.     Defendant denies the allegations of paragraph 57.

58.     Defendant denies the allegations of paragraph 58.

59.     Defendant denies the allegations of paragraph 59.

60.     Defendant denies the allegations of paragraph 60.

61.     Defendant denies the allegations of paragraph 61.

62.     Defendant denies the allegations of paragraph 62.

63.     Defendant denies the allegations of paragraph 63.

64.     Defendant denies the allegations of paragraph 64.

65.     Defendant denies the allegations of paragraph 65.

66.     Defendant denies the allegations of paragraph 66.

67.     Defendant denies the allegations of paragraph 67.

68.     Defendant denies the allegations of paragraph 68.

69.     Defendant denies the allegations of paragraph 69.

70.     Defendant denies the allegations of paragraph 70.

71.     Defendant denies the allegations of paragraph 71.

72.     Defendant denies the allegations of paragraph 72.

73.     Defendant denies the allegations of paragraph 73.

74.     Defendant denies the allegations of paragraph 74.

75.     Defendant denies the allegations of paragraph 75.

76.     To the extent they apply to him, Defendant denies the allegations of paragraph 76.

77.     Defendant denies the allegations of paragraph 77.

78.     Defendant denies the allegations of paragraph 78.

79.     To the extent they apply to him, Defendant denies the allegations of paragraph 79.

80.     Defendant denies the allegations of paragraph 80.

81.     Defendant is without knowledge and information sufficient to form a belief as to the truth of the allegations of paragraph 81, and therefore denies them.

82.     Defendant is without knowledge and information sufficient to form a belief as to the truth of the allegations of paragraph 82, and therefore denies them.

83.     Defendant denies the allegations of paragraph 83.

84.     Defendant is without knowledge and information sufficient to form a belief as to the truth of the allegations of paragraph 84, and therefore denies them.

85.     Defendant denies the allegations of paragraph 85.

86.     Defendant denies the allegations of paragraph 86, except admits that Ms. Cojocaru graduated from John Jay in 2014 and subsequently enrolled in a graduate degree program in Criminal Justice at Rutgers.

87.     Defendant denies the allegations of paragraph 87.

88.     Defendant denies the allegations of paragraph 88.

89.     Defendant denies the allegations of paragraph 89.

90.     Defendant denies the allegations of paragraph 90.

91.     Defendant is without knowledge and information sufficient to form a belief as to the truth of the allegations of paragraph 91, and therefore denies them, except admits that he advocated for Ms. Cojocaru to get an adjunct teaching position at John Jay, and that Ms. Cojocaru was hired by John Jay as an adjunct, and that she taught a course entitled "Sex and Culture."

92.     Defendant denies the allegations of paragraph 92.

93.     Defendant denies the allegations of paragraph 93, except admits that Defendant informed Cojocaru that she could let her students know that they could volunteer to assist Defendant in projects that he was conducting on weekends.

94.     Defendant denies the allegations of paragraph 94.

95.     To the extent they apply to him, Defendant denies the allegations of paragraph 95.

96.     Defendant is without knowledge and information sufficient to form a belief as to the truth of the allegations of paragraph 96, and therefore denies them.

97.     Defendant is without knowledge and information sufficient to form a belief as to the truth of the allegations of paragraph 97, and therefore denies them.

98.     To the extent they apply to him, Defendant denies the allegations of paragraph 98.

99.     Defendant is without knowledge and information sufficient to form a belief as to the truth of the allegations of paragraph 99, and therefore denies them, except admits that Ms. Haber attended John Jay and received a bachelor's degree.

100.    Defendant is without knowledge and information sufficient to form a belief as to the truth of the allegations of paragraph 100, and therefore denies them.

101.    Defendant is without knowledge and information sufficient to form a belief as to the truth of the allegations of paragraph 101, and therefore denies them, except admits that she applied to and was accepted by John Jay.

102.    Defendant is without knowledge and information sufficient to form a belief as to the truth of the allegations of paragraph 102, and therefore denies them.

103.    Defendant is without knowledge and information sufficient to form a belief as to the truth of the allegations of paragraph 103, and therefore denies them, except admits that Ms. Haber enrolled in a course with Dr. Manelski, who reportedly made calls to Ms. Haber and left messages for her.

104.    Defendant is without knowledge and information sufficient to form a belief as to the truth of the allegations of paragraph 104, and therefore denies them.

105.    Defendant is without knowledge and information sufficient to form a belief as to the truth of the allegations of paragraph 105, and therefore denies them.

106.    Defendant denies the allegations of paragraph 106, except admits that he met with her and Deputy Chair David Green in his office to discuss Ms. Haber's concerns.

107.    Defendant denies the allegations of paragraph 107.

108. Defendant denies the allegations of paragraph 108, except admits that he offered Ms. Haber and other students free tickets to attend a fund-raising event for a non-profit organization that fights AIDS, which Ms. Haber attended.

109. Defendant denies the allegations of paragraph 109.

110. Defendant denies the allegations of paragraph 110.

111. Defendant denies the allegations of paragraph 111.

112. Defendant denies the allegations of paragraph 112.

113. Defendant denies the allegations of paragraph 113.

114. Defendant denies the allegations of paragraph 114, except admits that he gave Ms. Haber his personal cell phone number, and is without sufficient knowledge and information to form a belief as to the truth of the allegation that he drafted an email to Provost Bowers or other members of the John Jay staff.

115. Defendant denies the allegations of paragraph 115.

116. Defendant denies the allegations of paragraph 116.

117. Defendant is without sufficient knowledge and information to form a belief as to the truth of the allegations of paragraph 117, and therefore denies them.

118. Defendant is without sufficient knowledge and information to form a belief as to the truth of the allegations of paragraph 118, and therefore denies them.

119. Defendant denies the allegations of paragraph 119, except admits that, on August 14, 2015, in response to an email from Ms. Haber expressing the concern that Professor Adams had seen her walking in the hallway with a black male student and would think she was sexually attracted to black men, just not him, and concluding, "Fuck me," Defendant sent Ms. Haber the

joking email referred to – to which Ms. Haber replied, "AHAHHHAHAHAHAHA.  I'm peeing," making clear that she understood the offer was a joke rather than unwelcome sexual harassment.



120.    Defendant denies the allegations of paragraph 120.

121.    Defendant denies the allegations of paragraph 121.

122.    Defendant denies the allegations of paragraph 122.

123.    To the extent they apply to him, Defendant denies the allegations of paragraph 123.

124.    Defendant denies the allegations of paragraph 124.

125.    Defendant denies the allegations of paragraph 125, except admits that Ms. Haber, as well as Ms. Cojocaru, often asked to join Defendant on his morning runs and gym workouts, and that Defendant sent them the text message and photograph referred to when, after promising to come run with Defendant on his birthday, they did not show up.

126.    Defendant denies the allegations of paragraph 126.

127.    Defendant denies the allegations of paragraph 127.

128.    Defendant denies the allegations of paragraph 128.

129.    Defendant denies the allegations of paragraph 129.

130.    Defendant denies the allegations of paragraph 130.

131.    To the extent they apply to him, Defendant denies the allegations of paragraph 131.

132.    To the extent they apply to him, Defendant denies the allegations of paragraph 132.

133.    To the extent they apply to him, Defendant denies the allegations that Defendant urged Ms. Haber to condone unwanted physical touch and would shun her if she refused, and is without sufficient knowledge and information to form a belief as to the truth of the other allegations of paragraph 133, and therefore denies them.

134.    Defendant denies the allegations of paragraph 134, except admits that this holiday party, like others at John Jay, had alcohol available for drinking.

135.    Defendant is without sufficient knowledge and information to form a belief as to the truth of the allegations of paragraph 135, and therefore denies them.

136.    Defendant is without sufficient knowledge and information to form a belief as to the truth of the allegations of paragraph 136, and therefore denies them.

137.    Defendant is without sufficient knowledge and information to form a belief as to the truth of the allegations of paragraph 137, and therefore denies them.

138.    Defendant is without sufficient knowledge and information to form a belief as to the truth of the allegations of paragraph 138, and therefore denies them.

139.    Defendant denies the allegations of paragraph 139.

140.    Defendant denies the allegations of paragraph 140.

141.   Defendant is without sufficient knowledge and information to form a belief as to the truth of the allegations of paragraph 141, and therefore denies them.

142.   Defendant is without sufficient knowledge and information to form a belief as to the truth of the allegations of paragraph 142, and therefore denies them.

143.   Defendant is without sufficient knowledge and information to form a belief as to the truth of the allegations of paragraph 143, and therefore denies them.

144.   Defendant is without sufficient knowledge and information to form a belief as to the truth of the allegations of paragraph 144, and therefore denies them.

145.   Defendant is without sufficient knowledge and information to form a belief as to the truth of the allegations of paragraph 145, and therefore denies them.

146.   Defendant is without sufficient knowledge and information to form a belief as to the truth of the allegations of paragraph 146, and therefore denies them.

147.   Defendant is without sufficient knowledge and information to form a belief as to the truth of the allegations of paragraph 147, and therefore denies them.

148.   Defendant is without sufficient knowledge and information to form a belief as to the truth of the allegations of paragraph 148, and therefore denies them.

149.   Defendant is without sufficient knowledge and information to form a belief as to the truth of the allegations of paragraph 149, and therefore denies them.

150.   Defendant is without sufficient knowledge and information to form a belief as to the truth of the allegations of paragraph 150 and therefore denies them.

151.   Defendant is without sufficient knowledge and information to form a belief as to the truth of the allegations of paragraph 151, and therefore denies them.

152.    Defendant is without sufficient knowledge and information to form a belief as to the truth of the allegations of paragraph 152, and therefore denies them.

153.    Defendant is without sufficient knowledge and information to form a belief as to the truth of the allegations of paragraph 153, and therefore denies them.

154.    Defendant is without sufficient knowledge and information to form a belief as to the truth of the allegations of paragraph 154, and therefore denies them.

155.    Defendant is without sufficient knowledge and information to form a belief as to the truth of the allegations of paragraph 155, and therefore denies them.

156.    Defendant is without sufficient knowledge and information to form a belief as to the truth of the allegations of paragraph 156, and therefore denies them.

157.    Defendant is without sufficient knowledge and information to form a belief as to the truth of the allegations of paragraph 157, and therefore denies them.

158.    Defendant is without sufficient knowledge and information to form a belief as to the truth of the allegations of paragraph 158, and therefore denies them.

159.    Defendant is without sufficient knowledge and information to form a belief as to the truth of the allegations of paragraph 159, and therefore denies them.

160.    Defendant is without sufficient knowledge and information to form a belief as to the truth of the allegations of paragraph 160, and therefore denies them.

161.    Defendant is without sufficient knowledge and information to form a belief as to the truth of the allegations of paragraph 161, and therefore denies them.

162.    To the extent they apply to him, Defendant denies the allegations of paragraph 162.

163.    Defendant is without knowledge and information sufficient to form a belief as to the truth of the allegations of paragraph 163, and therefore denies them.

164. To the extent they apply to him, Defendant denies the allegations of paragraph 164.

165. To the extent they apply to him, Defendant is without knowledge and information sufficient to form a belief as to the truth of the allegations of paragraph 165, and therefore denies them.

166. To the extent they apply to him, Defendant denies the allegations of paragraph 166.

167. Defendant denies the allegations of paragraph 167.

168. To the extent they apply to him, Defendant denies the allegations of paragraph 168.

169. Defendant admits the allegations of paragraph 169.

170. To the extent they apply to him, Defendant denies the allegation that Ms. Cojocaru and Ms. Haber experienced sexual harassment, and is without sufficient knowledge and information to form a belief as to the truth of the other allegations of paragraph 170, and therefore denies them.

171. To the extent they apply to him, Defendant is without knowledge and information sufficient to form a belief as to the truth of the allegations of paragraph 171, and therefore denies them.

172. To the extent they apply to him, Defendant is without knowledge and information sufficient to form a belief as to the truth of the allegations of paragraph 172, and therefore denies them.

173. To the extent they apply to him, Defendant is without knowledge and information sufficient to form a belief as to the truth of the allegations of paragraph 173, and therefore denies them.

174. To the extent they apply to him, Defendant is without knowledge and information sufficient to form a belief as to the truth of the allegations of paragraph 174, and therefore denies them.

175.    To the extent they apply to him, Defendant is without knowledge and information sufficient to form a belief as to the truth of the allegations of paragraph 175, and therefore denies them.

176.    To the extent they apply to him, Defendant is without knowledge and information sufficient to form a belief as to the truth of the allegations of paragraph 176, and therefore denies them.

177.    To the extent they apply to him, Defendant is without knowledge and information sufficient to form a belief as to the truth of the allegations of paragraph 177, and therefore denies them.

178.    To the extent they apply to him, Defendant is without knowledge and information sufficient to form a belief as to the truth of the allegations of paragraph 178, and therefore denies them.

179.    To the extent they apply to him, Defendant is without knowledge and information sufficient to form a belief as to the truth of the allegations of paragraph 179, and therefore denies them.

180.    To the extent they apply to him, Defendant is without knowledge and information sufficient to form a belief as to the truth of the allegations of paragraph 180, and therefore denies them.

181.    To the extent they apply to him, Defendant is without knowledge and information sufficient to form a belief as to the truth of the allegations of paragraph 181, and therefore denies them.

182.    To the extent they apply to him, Defendant is without knowledge and information sufficient to form a belief as to the truth of the allegations of paragraph 182, and therefore denies them.

183.    To the extent they apply to him, Defendant is without knowledge and information sufficient to form a belief as to the truth of the allegations of paragraph 183, and therefore denies them.

184.    To the extent they apply to him, Defendant is without knowledge and information sufficient to form a belief as to the truth of the allegations of paragraph 184, and therefore denies them.

185.    To the extent they apply to him, Defendant is without knowledge and information sufficient to form a belief as to the truth of the allegations of paragraph 185, and therefore denies them.

186.    To the extent they apply to him, Defendant is without knowledge and information sufficient to form a belief as to the truth of the allegations of paragraph 186, and therefore denies them.

187.    To the extent they apply to him, Defendant is without knowledge and information sufficient to form a belief as to the truth of the allegations of paragraph 187, and therefore denies them.

188.    To the extent they apply to him, Defendant is without knowledge and information sufficient to form a belief as to the truth of the allegations of paragraph 188, and therefore denies them.

Case 1:19-cv-05442-AKH Document 76-2 Filed 03/06/20 Page 20 of 74

189.     To the extent they apply to him, Defendant is without knowledge and information sufficient to form a belief as to the truth of the allegations of paragraph 189, and therefore denies them.

190.     To the extent they apply to him, Defendant is without knowledge and information sufficient to form a belief as to the truth of the allegations of paragraph 190, and therefore denies them.

191.     Defendant is without knowledge and information sufficient to form a belief as to the truth of the allegations of paragraph 191, and therefore denies them.

192.     Defendant is without knowledge and information sufficient to form a belief as to the truth of the allegations of paragraph 192, and therefore denies them.

193.     Defendant is without knowledge and information sufficient to form a belief as to the truth of the allegations of paragraph 193, and therefore denies them.

194.     Defendant is without knowledge and information sufficient to form a belief as to the truth of the allegations of paragraph 194, and therefore denies them.

195.     Defendant is without knowledge and information sufficient to form a belief as to the truth of the allegations of paragraph 195, and therefore denies them.

196.     Defendant is without knowledge and information sufficient to form a belief as to the truth of the allegations of paragraph 196, and therefore denies them.

197.     Defendant is without knowledge and information sufficient to form a belief as to the truth of the allegations of paragraph 197, and therefore denies them.

198.     Defendant is without knowledge and information sufficient to form a belief as to the truth of the allegations of paragraph 198, and therefore denies them.

199.    Defendant is without knowledge and information sufficient to form a belief as to the truth of the allegations of paragraph 199, and therefore denies them.

200.    Defendant is without knowledge and information sufficient to form a belief as to the truth of the allegations of paragraph 200, and therefore denies them.

201.    Defendant is without knowledge and information sufficient to form a belief as to the truth of the allegations of paragraph 201, and therefore denies them.

202.    Defendant is without knowledge and information sufficient to form a belief as to the truth of the allegations of paragraph 202, and therefore denies them.

203.    Defendant is without knowledge and information sufficient to form a belief as to the truth of the allegations of paragraph 203, and therefore denies them.

204.    Defendant is without knowledge and information sufficient to form a belief as to the truth of the allegations of paragraph 204, and therefore denies them.

205.    Defendant is without knowledge and information sufficient to form a belief as to the truth of the allegations of paragraph 205, and therefore denies them.

206.    Defendant is without knowledge and information sufficient to form a belief as to the truth of the allegations of paragraph 206, and therefore denies them.

207.    Defendant is without knowledge and information sufficient to form a belief as to the truth of the allegations of paragraph 207, and therefore denies them.

208.    Defendant is without knowledge and information sufficient to form a belief as to the truth of the allegations of paragraph 208, and therefore denies them.

209.    Defendant is without knowledge and information sufficient to form a belief as to the truth of the allegations of paragraph 209, and therefore denies them.

210.    Defendant is without knowledge and information sufficient to form a belief as to the truth of the allegations of paragraph 210, and therefore denies them.

211.    Defendant is without knowledge and information sufficient to form a belief as to the truth of the allegations of paragraph 211, and therefore denies them.

212.    To the extent they apply to him, Defendant denies the allegations of paragraph 212.

213.    Defendant is without knowledge and information sufficient to form a belief as to the truth of the allegations of paragraph 213, and therefore denies them.

214.    Defendant is without knowledge and information sufficient to form a belief as to the truth of the allegations of paragraph 214, and therefore denies them.

215.    Defendant is without knowledge and information sufficient to form a belief as to the truth of the allegations of paragraph 215, and therefore denies them.

216.    Defendant is without knowledge and information sufficient to form a belief as to the truth of the allegations of paragraph 216, and therefore denies them.

217.    Defendant is without knowledge and information sufficient to form a belief as to the truth of the allegations of paragraph 217, and therefore denies them.

218.    Defendant is without knowledge and information sufficient to form a belief as to the truth of the allegations of paragraph 218, and therefore denies them.

219.    Defendant is without knowledge and information sufficient to form a belief as to the truth of the allegations of paragraph 219, and therefore denies them.

220.    Defendant is without knowledge and information sufficient to form a belief as to the truth of the allegations of paragraph 220, and therefore denies them, and specifically denies that Ms. Cojocaru and Ms. Haber are or were "victims."

221.    Defendant admits the allegations of paragraph 221.

222.   Defendant is without knowledge and information sufficient to form a belief as to the truth of the allegations of paragraph 222, and therefore denies them.

223.   Defendant is without knowledge and information sufficient to form a belief as to the truth of the allegations of paragraph 223, and therefore denies them, but agrees that John Jay's focus and concern in the investigation appeared to be to protect the image of John Jay in the "Me Too" era, and failed to protect Defendant's rights.

224.   Defendant is without knowledge and information sufficient to form a belief as to the truth of the allegations of paragraph 224, and therefore denies them, except admits that John Jay released its interpretation of the results of its investigation on May 15, 2019.

225.   Defendant is without knowledge and information sufficient to form a belief as to the truth of the allegations of paragraph 225, and therefore denies them, except admits that John Jay did not share any of the rationale or basis for its findings with Defendant.

226.   Defendant is without knowledge and information sufficient to form a belief as to the truth of the allegations of paragraph 226, and therefore denies them, except admits that John Jay did not provide Defendant with the documents or witness statements that were gathered and relied upon over the course of the investigation.

227.   To the extent they apply to him, Defendant denies the allegations of paragraph 227.

228.   Defendant is without knowledge and information sufficient to form a belief as to the truth of the allegations of paragraph 228, and therefore denies them.

229.   Defendant is without knowledge and information sufficient to form a belief as to the truth of the allegations of paragraph 229, and therefore denies them.

230.   Defendant is without knowledge and information sufficient to form a belief as to the truth of the allegations of paragraph 230, and therefore denies them.

231.    To the extent they apply to him, Defendant denies the allegations of paragraph 231.

232.    Defendant is without knowledge and information sufficient to form a belief as to the truth of the allegations of paragraph 232, and therefore denies them.

233.    To the extent the allegations of paragraph 233 state legal conclusions, no response is required.  Defendant admits that he filed counterclaims, but denies that they are retaliatory.

234.    To the extent the allegations of paragraph 234 state legal conclusions, no response is required.

235.    To the extent the allegations of paragraph 235 state legal conclusions, no response is required.  Defendant admits that he filed counterclaims, but denies that they are retaliatory.

## ANSWER TO "FIRST CAUSE OF ACTION" ALLEGATIONS

236.    Defendant repeats and realleges each and every response set forth in the foregoing paragraphs as if fully set forth herein.

237.    The First Cause of Action, including paragraph 237, is not asserted against Defendant, so no response is required.  To the extent a response is required and to the extent the allegations concern Defendant, the allegations of paragraph 237 state legal conclusions, so no response is required.

238.    The First Cause of Action, including paragraph 238, is not asserted against Defendant, so no response is required.  To the extent a response is required and to the extent the allegations concern Defendant, the allegations of paragraph 238 state legal conclusions, so no response is required.

239.    The First Cause of Action, including paragraph 239, is not asserted against Defendant, so no response is required.  To the extent a response is required and to the extent the allegations

concern Defendant, the allegations of paragraph 239 state legal conclusions, so no response is required.

240.    The First Cause of Action, including paragraph 240, is not asserted against Defendant, so no response is required.  To the extent a response is required and to the extent the allegations concern Defendant, the allegations of paragraph 240 state legal conclusions, so no response is required.

241.    The First Cause of Action, including paragraph 241, is not asserted against Defendant, so no response is required.  To the extent a response is required and to the extent the allegations concern Defendant, the allegations of paragraph 241 state legal conclusions, so no response is required.

242.    The First Cause of Action, including paragraph 242, is not asserted against Defendant, so no response is required.  To the extent a response is required and to the extent the allegations concern Defendant, the allegations of paragraph 242 state legal conclusions, so no response is required.

243.    The First Cause of Action, including paragraph 243, is not asserted against Defendant, so no response is required.  To the extent a response is required and to the extent the allegations concern Defendant, the allegations of paragraph 243 state legal conclusions, so no response is required.

244.    The First Cause of Action, including paragraph 244, is not asserted against Defendant, so no response is required.  To the extent a response is required and to the extent the allegations concern Defendant, the allegations of paragraph 244 state legal conclusions, so no response is required.

## ANSWER TO "SECOND CAUSE OF ACTION" ALLEGATIONS

245.   Defendant repeats and realleges each and every response set forth in the foregoing paragraphs as if fully set forth herein.

246.   The Second Cause of Action, including paragraph 246, is not asserted against Defendant, so no response is required.  To the extent a response is required and to the extent the allegations concern Defendant, the allegations of paragraph 246 state legal conclusions, so no response is required.

247.   The Second Cause of Action, including paragraph 247, is not asserted against Defendant, so no response is required.  To the extent a response is required and to the extent the allegations concern Defendant, the allegations of paragraph 247 state legal conclusions, so no response is required.

248.   The Second Cause of Action, including paragraph 248, is not asserted against Defendant, so no response is required.  To the extent a response is required and to the extent the allegations concern Defendant, the allegations of paragraph 248 state legal conclusions, so no response is required.

249.   The Second Cause of Action, including paragraph 249, is not asserted against Defendant, so no response is required.  To the extent a response is required and to the extent the allegations concern Defendant, the allegations of paragraph 249 state legal conclusions, so no response is required.

## ANSWER TO "THIRD CAUSE OF ACTION" ALLEGATIONS

250.   Defendant repeats and realleges each and every response set forth in the foregoing paragraphs as if fully set forth herein.

251.    The Third Cause of Action, including paragraph 251, is not asserted against Defendant, so no response is required.  To the extent a response is required and to the extent the allegations concern Defendant, the allegations of paragraph 251 state legal conclusions, so no response is required.

252.    The Third Cause of Action, including paragraph 252, is not asserted against Defendant, so no response is required.  To the extent a response is required and to the extent the allegations concern Defendant, the allegations of paragraph 252 state legal conclusions, so no response is required.

253.    The Third Cause of Action, including paragraph 253, is not asserted against Defendant, so no response is required.  To the extent a response is required and to the extent the allegations concern Defendant, the allegations of paragraph 253 state legal conclusions, so no response is required.

254.    The Third Cause of Action, including paragraph 254, is not asserted against Defendant, so no response is required.  To the extent a response is required and to the extent the allegations concern Defendant, the allegations of paragraph 254 state legal conclusions, so no response is required.

255.    The Third Cause of Action, including paragraph 255, is not asserted against Defendant, so no response is required.  To the extent a response is required and to the extent the allegations concern Defendant, the allegations of paragraph 255 state legal conclusions, so no response is required.

256.    The Third Cause of Action, including paragraph 256, is not asserted against Defendant, so no response is required.  To the extent a response is required and to the extent the allegations

concern Defendant, the allegations of paragraph 256 state legal conclusions, so no response is required.

### ANSWER TO "FOURTH CAUSE OF ACTION" ALLEGATIONS

257.     Defendant repeats and realleges each and every response set forth in the foregoing paragraphs as if fully set forth herein.

258.     The Fourth Cause of Action, including paragraph 258, is not asserted against Defendant, so no response is required.  To the extent a response is required and to the extent the allegations concern Defendant, the allegations of paragraph 258 state legal conclusions, so no response is required.

259.     The Fourth Cause of Action, including paragraph 259, is not asserted against Defendant, so no response is required.  To the extent a response is required and to the extent the allegations concern Defendant, the allegations of paragraph 259 state legal conclusions, so no response is required.

260.     The Fourth Cause of Action, including paragraph 260, is not asserted against Defendant, so no response is required.  To the extent a response is required and to the extent the allegations concern Defendant, the allegations of paragraph 260 state legal conclusions, so no response is required.

### ANSWER TO "FIFTH CAUSE OF ACTION" ALLEGATIONS

261.     Defendant repeats and realleges each and every response set forth in the foregoing paragraphs as if fully set forth herein.

262.     To the extent the allegations of paragraph 262 state legal conclusions, no response is required.  To the extent a factual response is required and they apply to him, Defendant denies the allegations of paragraph 262.

263.    To the extent the allegations of paragraph 263 state legal conclusions, no response is required.  To the extent a factual response is required and they apply to him, Defendant denies the allegations of paragraph 263.

### ANSWER TO "SIXTH CAUSE OF ACTION" ALLEGATIONS

264.    Defendant repeats and realleges each and every response set forth in the foregoing paragraphs as if fully set forth herein.

265.    The Sixth Cause of Action, including paragraph 265, is not asserted against Defendant, so no response is required.  To the extent a response is required and the allegations concern Defendant, and to the extent the allegations of paragraph 265 state legal conclusions, no response is required.  To the extent a factual response is required, Defendant denies the allegations of paragraph 265.

266.    The Sixth Cause of Action, including paragraph 266, is not asserted against Defendant, so no response is required.  To the extent a response is required and the allegations concern Defendant, and to the extent the allegations of paragraph 266 state legal conclusions, no response is required.  To the extent a factual response is required, Defendant denies the allegations of paragraph 266.

267.    The Sixth Cause of Action, including paragraph 267, is not asserted against Defendant, so no response is required.  To the extent a response is required and the allegations concern Defendant, and to the extent the allegations of paragraph 267 state legal conclusions, no response is required.  To the extent a factual response is required, Defendant denies the allegations of paragraph 267.

268.    The Sixth Cause of Action, including paragraph 268, is not asserted against Defendant, so no response is required.  To the extent a response is required and the allegations concern

Defendant, and to the extent the allegations of paragraph 268 state legal conclusions, no response is required. To the extent a factual response is required, Defendant denies the allegations of paragraph 268.

**ANSWER TO "SEVENTH CAUSE OF ACTION" ALLEGATIONS**

269.     Defendant repeats and realleges each and every response set forth in the foregoing paragraphs as if fully set forth herein.

270.     The Seventh Cause of Action, including paragraph 270, is not asserted against Defendant, so no response is required. To the extent a response is required and the allegations concern Defendant, and to the extent the allegations of paragraph 270 state legal conclusions, no response is required. To the extent a factual response is required, Defendant denies the allegations of paragraph 270.

271.     The Seventh Cause of Action, including paragraph 271, is not asserted against Defendant, so no response is required. To the extent a response is required and the allegations concern Defendant, and to the extent the allegations of paragraph 271 state legal conclusions, no response is required. To the extent a factual response is required, Defendant denies the allegations of paragraph 271.

272.     The Seventh Cause of Action, including paragraph 272, is not asserted against Defendant, so no response is required. To the extent a response is required and the allegations concern Defendant, and to the extent the allegations of paragraph 272 state legal conclusions, no response is required. To the extent a factual response is required, Defendant denies the allegations of paragraph 272.

273.     The Seventh Cause of Action, including paragraph 273, is not asserted against Defendant, so no response is required. To the extent a response is required and the allegations

concern Defendant, and to the extent the allegations of paragraph 273 state legal conclusions, no response is required.  To the extent a factual response is required, Defendant denies the allegations of paragraph 273.

### ANSWER TO "EIGHTH CAUSE OF ACTION" ALLEGATIONS

274.     Defendant repeats and realleges each and every response set forth in the foregoing paragraphs as if fully set forth herein.

275.     To the extent the allegations of paragraph 275 state legal conclusions, no response is required.  To the extent a factual response is required and they apply to him, Defendant denies the allegations of paragraph 275.

276.     To the extent the allegations of paragraph 276 state legal conclusions, no response is required.  To the extent a factual response is required and they apply to him, Defendant denies the allegations of paragraph 276.

277.     To the extent the allegations of paragraph 277 state legal conclusions, no response is required.  To the extent a factual response is required and they apply to him, Defendant denies the allegations of paragraph 277.

### ANSWER TO "NINTH CAUSE OF ACTION" ALLEGATIONS

274.     Defendant repeats and realleges each and every response set forth in the foregoing paragraphs as if fully set forth herein.[1]

275.     The Ninth Cause of Action, including paragraph 275, is not asserted against Defendant, so no response is required.  To the extent a response is required and the allegations concern Defendant, and to the extent the allegations of paragraph 275 state legal conclusions, no response is

---

[1]     Defendant adopts and incorporates this duplicative paragraph numbering from the Amended Complaint.

required.  To the extent a factual response is required, Defendant denies the allegations of paragraph 275.

276.    The Ninth Cause of Action, including paragraph 276, is not asserted against Defendant, so no response is required.  To the extent a response is required and the allegations concern Defendant, and to the extent the allegations of paragraph 276 state legal conclusions, no response is required.  To the extent a factual response is required, Defendant denies the allegations of paragraph 276.

277.    The Ninth Cause of Action, including paragraph 277, is not asserted against Defendant, so no response is required.  To the extent a response is required and the allegations concern Defendant, and to the extent the allegations of paragraph 277 state legal conclusions, no response is required.  To the extent a factual response is required, Defendant denies the allegations of paragraph 277.

278.    The Ninth Cause of Action, including paragraph 278, is not asserted against Defendant, so no response is required.  To the extent a response is required and the allegations concern Defendant, and to the extent the allegations of paragraph 278 state legal conclusions, no response is required.  To the extent a factual response is required, Defendant denies the allegations of paragraph 278.

## ANSWER TO "TENTH CAUSE OF ACTION" ALLEGATIONS

279.    Defendant repeats and realleges each and every response set forth in the foregoing paragraphs as if fully set forth herein.

280.    The Tenth Cause of Action, including paragraph 280, is not asserted against Defendant, so no response is required.  To the extent a response is required and the allegations concern Defendant, and to the extent the allegations of paragraph 280 state legal conclusions, no response is

required.  To the extent a factual response is required, Defendant denies the allegations of paragraph 280.

281.    The Tenth Cause of Action, including paragraph 281, is not asserted against Defendant, so no response is required.  To the extent a response is required and the allegations concern Defendant, and to the extent the allegations of paragraph 281 state legal conclusions, no response is required.  To the extent a factual response is required, Defendant denies the allegations of paragraph 281.

### ANSWER TO "ELEVENTH CAUSE OF ACTION" ALLEGATIONS

282.    Defendant repeats and realleges each and every response set forth in the foregoing paragraphs as if fully set forth herein.

283.    The Eleventh Cause of Action, including paragraph 283, is not asserted against Defendant, so no response is required.  To the extent a response is required and the allegations concern Defendant, and to the extent the allegations of paragraph 283 state legal conclusions, no response is required.  To the extent a factual response is required, Defendant denies the allegations of paragraph 283.

284.    The Eleventh Cause of Action, including paragraph 284, is not asserted against Defendant, so no response is required.  To the extent a response is required and the allegations concern Defendant, and to the extent the allegations of paragraph 284 state legal conclusions, no response is required.  To the extent a factual response is required, Defendant denies the allegations of paragraph 284.

285.    The Eleventh Cause of Action, including paragraph 285, is not asserted against Defendant, so no response is required.  To the extent a response is required and the allegations concern Defendant, and to the extent the allegations of paragraph 285 state legal conclusions, no

response is required.  To the extent a factual response is required, Defendant denies the allegations of paragraph 285.

## ANSWER TO "TWELFTH CAUSE OF ACTION" ALLEGATIONS

286.     Defendant repeats and realleges each and every response set forth in the foregoing paragraphs as if fully set forth herein.

287.     To the extent the allegations of paragraph 287 state legal conclusions, no response is required.  To the extent a factual response is required and they apply to him, Defendant denies the allegations of paragraph 287.

288.     To the extent the allegations of paragraph 288 state legal conclusions, no response is required.  To the extent a factual response is required and they apply to him, Defendant denies the allegations of paragraph 288.

289.     To the extent the allegations of paragraph 289 state legal conclusions, no response is required.  To the extent a factual response is required and they apply to him, Defendant denies the allegations of paragraph 289.

## ANSWER TO "THIRTEENTH CAUSE OF ACTION" ALLEGATIONS

290.     Defendant repeats and realleges each and every response set forth in the foregoing paragraphs as if fully set forth herein.

291.     The Thirteenth Cause of Action, including paragraph 291, is not asserted against Defendant, so no response is required.  To the extent a response is required and to the extent the allegations concern Defendant, the allegations of paragraph 291 state legal conclusions, so no response is required.

292.     The Thirteenth Cause of Action, including paragraph 292, is not asserted against Defendant, so no response is required.  To the extent a response is required and to the extent the

allegations concern Defendant, the allegations of paragraph 292 state legal conclusions, so no response is required.

293.    The Thirteenth Cause of Action, including paragraph 293, is not asserted against Defendant, so no response is required.  To the extent a response is required and to the extent the allegations concern Defendant, the allegations of paragraph 293 state legal conclusions, so no response is required.

## ANSWER TO "FOURTEENTH CAUSE OF ACTION" ALLEGATIONS

294.    Defendant repeats and realleges each and every response set forth in the foregoing paragraphs as if fully set forth herein.

295.    The Fourteenth Cause of Action, including paragraph 295, is not asserted against Defendant, so no response is required.  To the extent a response is required and to the extent the allegations concern Defendant, the allegations of paragraph 295 state legal conclusions, so no response is required.

296.    The Fourteenth Cause of Action, including paragraph 296, is not asserted against Defendant, so no response is required.  To the extent a response is required and to the extent the allegations concern Defendant, the allegations of paragraph 296 state legal conclusions, so no response is required.

## ANSWER TO "FIFTEENTH CAUSE OF ACTION" ALLEGATIONS

297.    Defendant repeats and realleges each and every response set forth in the foregoing paragraphs as if fully set forth herein.

298.    The Fifteenth Cause of Action, including paragraph 298, is not asserted against Defendant, so no response is required.  To the extent a response is required and to the extent the

allegations concern Defendant, the allegations of paragraph 298 state legal conclusions, so no response is required.

299.    The Fifteenth Cause of Action, including paragraph 299, is not asserted against Defendant, so no response is required.  To the extent a response is required and to the extent the allegations concern Defendant, the allegations of paragraph 299 state legal conclusions, so no response is required.

<u>ANSWER TO "SIXTEENTH CAUSE OF ACTION" ALLEGATIONS</u>

300.    Defendant repeats and realleges each and every response set forth in the foregoing paragraphs as if fully set forth herein.

301.    To the extent the allegations of paragraph 301 state legal conclusions, no response is required.  To the extent a factual response is required and they apply to him, Defendant denies the allegations of paragraph 301.

302.    To the extent the allegations of paragraph 302 state legal conclusions, no response is required.  To the extent a factual response is required and they apply to him, Defendant denies the allegations of paragraph 302.

<u>ANSWER TO "SEVENTEENTH CAUSE OF ACTION" ALLEGATIONS</u>

303.    Defendant repeats and realleges each and every response set forth in the foregoing paragraphs as if fully set forth herein.

304.    To the extent the allegations of paragraph 304 state legal conclusions, no response is required.  To the extent a factual response is required and they apply to him, Defendant denies the allegations of paragraph 304.

305.    To the extent the allegations of paragraph 305 state legal conclusions, no response is required.  To the extent a factual response is required and they apply to him, Defendant denies the allegations of paragraph 305.

### ANSWER TO "PRAYER FOR RELIEF"

Defendant denies that Plaintiffs are entitled to relief against Defendant, and Defendant requests that the Court dismiss all claims against him with prejudice and order such further relief to Defendant as the Court deems just and proper.

### AFFIRMATIVE DEFENSES

At this time, without assuming any burden of proof, persuasion, or production not otherwise legally assigned to him as to any element of Plaintiffs' claims, Defendant assert the following affirmative and other defenses:

### FIRST AFFIRMATIVE DEFENSE

The Amended Complaint and each purported claim for relief stated therein against Defendant fails to allege facts sufficient to state a claim upon which relief may be granted.

### SECOND AFFIRMATIVE DEFENSE

Defendant is informed and believes, and on that basis alleges, that Plaintiffs' claims against the Defendant are barred in whole or in part because of Plaintiffs' criminal, tortious and inequitable conduct and unclean hands.

### THIRD AFFIRMATIVE DEFENSE

Defendant is informed and believes, and on that basis alleges, that Plaintiffs' claims against the Defendant are barred in whole or in part by the doctrines of laches, equitable estoppel, waiver, or other related equitable doctrines.

## FOURTH AFFIRMATIVE DEFENSE

Defendant is informed and believes, and on that basis alleges, that Plaintiffs' claims against the Defendant are barred by the applicable statutes of limitation.

## FIFTH AFFIRMATIVE DEFENSE

Defendant is entitled to immunity as he at all times material to the Amended Complaint properly and lawfully exercised his discretion as a public employee.

## SIXTH AFFIRMATIVE DEFENSE

Defendant is informed and believes, and on that basis alleges, Plaintiffs' Amended Complaint and claims against Defendant are barred in whole or in part because Defendant's allegedly actionable statements are all protected by the First Amendment and Article I, Section 8 of the New York Constitution.

## SEVENTH AFFIRMATIVE DEFENSE

Defendant is not liable to Plaintiffs in any amount because, at all times material herein, Defendant has not acted improperly or in bad faith with respect to Plaintiffs.

## EIGHTH AFFIRMATIVE DEFENSE

The acts alleged to have been committed in Plaintiffs' Amended Complaint, if found to have been committed, were committed by third parties over which Defendant had no control nor right of control.

## NINTH AFFIRMATIVE DEFENSE

Defendant is not liable to Plaintiffs in any amount because Plaintiffs have failed to act properly and in good faith with respect to Defendant.

### TENTH AFFIRMATIVE DEFENSE

Plaintiffs and/or their agents acting on their behalf are with unclean hands and have engaged in conduct consistent with malicious prosecution and/or abuse of process.

### ELEVENTH AFFIRMATIVE DEFENSE

Plaintiffs and their agents acting on their behalf are with unclean hands in filing this lawsuit and other actions and are acting in a manner with intent, or reckless disregard to defame and impugn Defendant, and to seek publicity and media attention and financial gain at the expense of Defendant.

### TWELFTH AFFIRMATIVE DEFENSE

By virtue of the tortious conduct and defamatory statements of Plaintiffs and/or their agents and/or acquaintances made upon their behalf against Defendant, Plaintiffs are barred in whole or in part from recovering for the claims made in their Amended Complaint.

### THIRTEENTH AFFIRMATIVE DEFENSE

Plaintiffs' Amended Complaint and claims against Defendant are barred, in whole or in part, in that Plaintiffs, and/or their agents acting on their behalf, are with unclean hands in that they have engaged in abuse of process, commenced and maintained a lawsuit in bad faith, engaged in tortious conduct and made defamatory and disparaging statements, engaging the media and public sphere withi defamatory and self-serving statements, in order to gain public notoriety, self-promotion and recognition, in order to seek financial gain at the expense and to the detriment of Defendant.

### FOURTEENTH AFFIRMATIVE DEFENSE

Defendant is informed and believes, and on that basis alleges, Plaintiffs' damages, if any, were not caused, in whole or in part, by the alleged conduct of Defendant.

## FIFTEENTH AFFIRMATIVE DEFENSE

Plaintiffs are not entitled to punitive damages against Defendant under the statutes and circumstances of this action.

## SIXTEENTH AFFIRMATIVE DEFENSE

Plaintiffs failed to mitigate any alleged damages.

## SEVENTEENTH AFFIRMATIVE DEFENSE

Insofar as Plaintiffs purport to allege claims for physical, mental or emotional distress, including claims for recovery of any medical expenses thereby incurred, Plaintiffs are barred by the exclusive remedy provision of the New York Workers' Compensation Law, Art. 2 §§ 10-11.

## EIGHTEENTH AFFIRMATIVE DEFENSE

This Court lacks subject matter jurisdiction because plaintiffs failed to exhaust their administrative remedies.

## NINETEENTH AFFIRMATIVE DEFENSE

Plaintiffs' Amended Complaint contains redundant, immaterial, impertinent, and/or scandalous matter and allegations that should be stricken by the Court pursuant to Fed. R. Civ. P. 12(f).  Plaintiffs' purpose in including this material in the Amended Complaint is unrelated to the lawsuit itself and is instead part of a design to disseminate knowingly false and defamatory material about Defendant to the media.

## TWENTIETH AFFIRMATIVE DEFENSE

Defendant reserves the right to raise any additional defenses, cross-claims, and third party claims not asserted herein of which he may become aware through discovery or other investigation, as may be appropriate at a later time.

WHEREFORE, Defendant RIC CURTIS demands judgment dismissing Plaintiffs'
Amended Complaint against him, together with the costs and disbursements of this action, and for
any expenses incurred by him in the defense thereof, including attorneys' fees and costs, and such
other and further relief as to this Court seems just and proper.

## COUNTERCLAIMS

Defendant and Counterclaimant ["Counterclaimant"] Ric Curtis, for his counterclaims
against Plaintiffs Claudia Cojocaru and Naomi Haber, alleges as follows:

## FACTUAL BACKGROUND

306.    Dr. Curtis was born in the State of Maine and has a degree in Sociology from the
University of Maine.  He has a Ph.D. from Columbia University's Teachers College.  He ran a
psychiatric day program for outpatients and worked in the foster care system at the beginning of the
crack epidemic, before starting to teach part-time at John Jay College in 1987, more than 32 years
ago.

307.    Dr. Curtis started as an adjunct professor and researcher.  About 10 years later, he began
teaching full time.  Since 2006, he has been a tenured, full professor at John Jay College.  He has
taught, counseled, and mentored thousands of John Jay students, including those with criminal
records and those who have been crime victims, and has nurtured and prepared them for careers in
academia, justice, law, law enforcement, anthropology and sociology, among others.  He has not
only mentored them in their academic and professional work, but he has created a supportive
environment where they can feel safe from stigma and focus on their academic work.  He has
changed countless lives for the better both inside and outside the John Jay college community.  He
served as the Chair of the Anthropology Department for more than 10 years, with a stellar track
record of leadership and collegiality, both within the Department and College-wide.  Thereafter,

because of that record, Dr. Curtis was appointed by the President of the College as Interim Chair of two troubled departments, Sociology and Law and Police Science, and nursed them back to health.

308. Dr. Curtis is an urban anthropologist, specializing in the study of crime and deviance, which has brought him into the orbit of a diverse group of people involved in illicit activities of various kinds, including sex workers, pimps, drug users and dealers, gang members and con-men.

309. For the last 30 years, Dr. Curtis has conducted research projects involving heroin, crack and other drugs, and their users and dealers on the streets and shooting galleries of New York City, Rochester, Newark, Hempstead and other cities. He has studied the impact of New York Police Department tactical narcotics teams in Brooklyn. He has conducted studies of sex and sex workers and commercially sexually exploited children in New York City and other cities around the country as well.

310. Dr. Curtis conducts these studies with teams of researchers from among his students, colleagues and volunteers.

311. Most of his studies have been funded by grants from the National Institute of Health and/or National Institute of Justice.

312. In spending time with, studying and writing about these people, Dr. Curtis has over the years developed skills in relating to and handling troubled and difficult people.

313. Dr. Curtis first met Plaintiff Cojocaru ("Cojocaru") when she was a student, sent to him by another John Jay professor familiar with his work. Cojocaru claimed to be a victim of sex trafficking in Romania, where she purportedly was born and raised, and in Japan. She claimed this victimization had caused her to have Post-Traumatic Stress Disorder, to be under the care of a psychiatrist, and to be taking a variety of anti-psychotic medications for her emotional and physical ailments. Upon information and belief, Cojocaru is approximately 40 years old.

314.    Because of her interest in sex trafficking, and her distrust of and antipathy for anti-trafficking organizations – views which mirrored those of Dr. Curtis – Dr. Curtis found common ground with Cojocaru and subsequently became a mentor to her.

315.    During her studies at John Jay, Cojocaru met and became close friends with another student, Plaintiff Haber ("Haber"). Over the course of their friendship, Haber, who upon information and belief is approximately 25 years old, modeled her identity and behavior on Cojocaru's, and  pursued academic opportunities that closely tracked Cojocaru's.  Dr. Curtis also became a mentor to Haber.

316.    During the next four years, Dr. Curtis's relationship with Cojocaru and Haber was one of academic mentorship and friendship.

317.    During those four years, neither Cojocaru nor Haber ever suggested to Dr. Curtis that they had been his victims of rape, sexual assault, other assault or sexual harassment.

318.    Upon information and belief, during those years, and prior to May 2018, neither Cojocaru nor Haber ever lodged a complaint of any kind about Dr. Curtis with the College, let alone that Dr. Curtis had raped, assaulted, sexually assaulted or sexually harassed them.

319.    To be clear, Dr. Curtis never had sex with Cojocaru or Haber.

320.    Dr. Curtis never raped or assaulted Cojocaru or Haber, sexually or otherwise.

321.    Dr. Curtis never had a relationship of a sexual nature of any kind with Cojocaru or Haber.

322.    Dr. Curtis never engaged in any sexual, inappropriate or exploitative physical contact with Cojocaru or Haber.

323.    Dr. Curtis did not create an unwelcome sexually- or gender-based hostile work or academic environment for Cojocaru or Haber.

324.     Rather, during those years, Dr. Curtis created and maintained a relaxed, welcoming
mentoring relationship and academic and work environment for Cojocaru and Haber without even a
peep of a complaint to him about his conduct from either of them – about sexual misconduct or
anything else – while Cojocaru and Haber often complained to him about perceived slights from
others, both inside and outside the College.

325.     By way of example only, after Cojocaru was admitted to the Masters Degree program at
Rutgers University in 2016, she wrote three emails of complaint as a student there, on November 6
and December 6, 2016 and June 2, 2017, which she shared with Dr. Curtis.

326.     In those emails, Cojocaru made a series of extraordinary, incredible complaints against
numerous members of the Rutgers faculty, of, in her words, "inhuman treatment," "harassment,"
"bullying," "stalking," "exploitation," "plagiarism," "obstruction of academic freedom," "boundary
violations," "censorship," "discrimination," "gender discrimination," "hostility," "symbolic
violence," "gaslighting," "insults," "passive aggressive attacks," "labeling," "grade penalization,"
"unexplained grading criteria," "retaliation," and more.  She also accused her Rutgers Department
Chair of exposing her to "relentless . . . sexual harassment" (by an interviewee), and of being
"rather dull and overly compliant, rejecting creativity and intellectual inquiry in favor of safety and
redundancy," and of showing favoritism to two other students whom she characterized as suffering
from "affluenza or, worse, 'complienzza,'" and being "intellectually dim, but compliant and
servile."

327.     Cojocaru also made similar complaints to Dr. Curtis about a professor emeritus in the
United Kingdom and a former Attorney General of New Jersey.

328.     In other electronic communications in 2016, Cojocaru wrote that she "humiliated"
another professor at Rutgers, that she "pretends" she is crazy, that she pushes her Attention Deficit

Disorder and Asperger's, and that she "would like to fuck them [the Rutgers faculty about whom she complained when she was a Masters Degree student] up where it hurts."





329.    While some women are reluctant to report sexual assault, harassment and other misconduct when it occurs, Cojocaru's actions and communications demonstrate that she is not. She has never been shy about immediately complaining to Dr. Curtis and others, and on social media, when she believes someone has abused or taken advantage of her.

330.    On December 19, 2017, the Deputy Chair of the Anthropology Department met with Cojocaru in the Deputy Chair's office and apparently made one remark which offended Cojocaru in some way.  That same day, Cojocaru wrote an email to the Deputy Chair, noting that "by now I am used to all kinds of harassment, bullying and discrimination, both from men, and women. . . .  I believe it is time for me to educate you, and whomever else feels inclined to overstep these boundaries in the future."  She then accused the Deputy Chair of "maternalism," of "presum[ing] you can dismiss me, or what work I do," of being "older, prejudiced, [and] situated in a better job at which you've been around for longer," of "deriding" her work, "judging" her, "condescension," "mak[ing] passive aggressive comments," "hypocrisy," "mistreatment," "assign[ing] stigmatizing identities to me," and "tell[ing] me that I needed a PhD" to "do research, teach a class, or publish," and "profit[ing] off of my, and others' labour" as an adjunct.

331.    Two days later, Cojocaru wrote the Deputy Chair another email, saying "I almost forgot to add the most important point to my previous email – an apology for disrupting your comfortable complacency to patriarchy in academia."

332.    A week later, on December 27, 2017, a student, on behalf of many others in a class taught by Cojocaru as an adjunct, wrote the Deputy Chair a complaint about Cojocaru's bullying, disorganization, and unprofessional conduct.

333.    On January 5, 2018, Cojocaru copied the Deputy Chair on an email she wrote to the Anthropology Department secretary, saying, "I would love to send out my syllabus, but im afraid it

45

is too complicated for [the Deputy Chair] to understand. She may want to enroll in my class," which requires "a steady commitment to reading, writing and critical assessment of psychology, anthropology, criminology, history, and a familiarity with social media and social justice activism that [the Deputy Chair] clearly lacks."

334. Upon information and belief, in or about April and May 2018, the Deputy Chair of the Anthropology Department received several additional abusive emails from Cojocaru asserting, among other things, that she was too "stupid" to understand the work of a true feminist like Cojocaru. Cojocaru circulated this email to others in the Department to humiliate and provoke the Deputy Chair.

335. This pattern – of immediately calling those to account that she believes have disadvantaged her in some way and of claiming that she was victimized by the ordinary goings-on of an academic institution – will be familiar to victims of the complaints Cojocaru has made against other John Jay faculty, students and administrative staff.

336. Ironically, these complaints by Cojocaru included serious complaints about her co-plaintiff and close friend, Haber.

337. In electronic communications in 2016, Cojocaru wrote to Dr. Curtis and others that she "caught [Haber] in quite a few lies," that Haber "is acting out some kind of person I don't know," that Haber is stealing Cojocaru's work and wallet, and that Haber "is constantly fucking herself up." Cojocaru then asked why she herself is "attracting characters" like Haber.









338.    In a January 26, 2017 Instant Message to a John Jay faculty member, Cojocaru wrote

that Haber is a fraud, and that she wants to be a survivor leader (of sex trafficking) when in fact she

is not.  Cojocaru called Haber's fantasy a "delusion"; she also stated that Haber wants to convince

people that Cojocaru is actually "trafficking" Haber – pimping her out. She complained that Haber

told "people I was abusive and I was forcing her to do stuff." She also told the faculty member that Haber "always fabricates" and that Haber was planning "to fabricate" that "Ric was running a sex trafficking ring," and that "I was going to traffic her, or Ric [Dr. Curtis], or whomever. And while I was going to prison or whatever, she was going to tell her story of how she fell for my manipulative shit. I can't make this stuff up."



Well, it was going to be like this - i was going to traffic her

Or Ric

Or whomever

And while I was going to prison or whatever, she was going to tell her story of how she fell for my manipulative shit

I can't make this stuff up

Besides, most people in this movement have not been trafficked

 I spent these 2 years wisely

··· 😊 i guess it would be cool if someone came out and said "i wasn't trafficked. fooled ya!"

and presented evidence of the whole conspiracy

There is

That's why "trauma coerced bonding"

In case someone decided to turn around

Like that porn actress

no i mean evidence of the set up beforehand

I don't know lol

I wish



just getting evidence of being pimped out....is not enough....that's like 1/4 of the plan in my eyes to successfully prove the point. otherwise the point of obtaining that evidence is moot

Or that Ric was running a sex trafficking ring

prove the point that anyone can pretend to be trafficked

Well, she was going to fabricate that lol

nah you need to show the whole conspiracy

she's an amateur at research methodology

Well, not to the abolitionists

it doesn't add up

She doesn't know anything about methodology

Ahahaha

why fabricate?

She always fabricates

To get attention

like....unless she was planning on living the life as a survivalist and that's it....

in which case fuck that

She doesn't think that far

Come on

You know the type

I don't know why she does it

Or if she thought she was going to get anything out of it

well....her plan would work brilliantly for our cause....if she added additional steps

and if her purpose was different

Like what?

339.     Cojocaru sent this January 2017 message more than two years after Dr. Curtis had,
according to Cojocaru's and Haber's fabricated allegations here, purportedly started raping,
assaulting, and sexually harassing them. And less than 18 months later, Cojocaru joined Haber in
"planning to fabricate a story that" Ric "was going to traffic her," and that "Ric was running a sex
trafficking ring." But instead of Cojocaru "pimping Haber out," it is now Dr. Curtis "pimping out"
Cojocaru and Haber.

340.     Cojocaru's penchant for immediately calling to account those she believes have harmed
her in some way is utterly inconsistent with her false suggestion that she sustained years of sexual
violence, assault, and harassment at the hands of Dr. Curtis without immediately complaining to
College administrators, and to anyone else within earshot or receiving her social media feeds.

341.     Cojocaru's and Haber's electronic communications with Dr. Curtis during those years
were utterly bereft of any suggestion or indication of sexual abuse or harassment – indeed, quite the
contrary. They sang his praises and maintained cordial relations with him in those electronic
communications, as they did in person.

342.     By way of example only, on June 16, 2015, Cojocaru texted Dr. Curtis: "Ric! You saved
us. Can you imagine where I would be without you? Or can you imagine where Naomi would be
now? Hahaha.! You saved us from abolitionists!!!! Thank[] you!"

343.     On March 23, 2016, Cojocaru texted Dr. Curtis: "Ric, when is your spring break? I need
to come hang out before I die…. But I definitely need to come and recharge my good energy
battery. The venomous hydras across the river [at Rutgers] are getting to me. Haha."

344.     On September 20, 2017, Haber texted Dr. Curtis: "What's the Jewish guy's name? I
want to look him up. Lol…. What school is he coming from? LOL ok…. Sexy! LOL. Thanks!!
You sure he's single?"

345.    The truth in this case is that neither Cojocaru nor Haber is a sexual assault or sexual harassment victim; rather, they are sexual manipulators, if not predators, themselves.

346.    Not long after meeting Haber in December 2014, Cojocaru texted Dr. Curtis that she was trying to "calm [Haber's] horny hormones," advising Haber about how to sexually approach a male professor and joking that another professor had "lost" this opportunity.

347.    In Spring 2015, Cojocaru and Haber attended a writer's workshop at Bennington College in Vermont that Dr. Curtis had arranged for them to attend.  They were dismissed for their unruly behavior, but not before Cojocaru sent provocative emails to a male professor at John Jay, saying that Haber, Cojocaru's "lieutenant," is "ready to be worshipped with or without a bra."

348.    Upon information and belief, when first meeting another male faculty member at the College while she was an undergraduate, Cojocaru identified herself as a sex-work expert, saying she had been sex trafficked in six Eastern European countries, and sought after as one of the most desired sex workers because of her special skills.  Subsequently, at a bar in New Orleans at the American Society of Criminology (ASC) conference in 2016, the same faculty member observed Cojocaru flirting with, and trying to touch, another male College faculty member also attending the conference, who finally left the bar to avoid her.  Cojocaru then approached the first faculty member and asked, "What is wrong with [him]?  Is he gay?"  The faculty member replied, "he is selective."  With a disgusted smirk on her face, Cojocaru said, "he does not know how sweet my pussy is."  She then stood up and thrust her genitals in the man's face and said, "you have never smelled anything like this before."  The faculty member told her to stay away from him, at which time she walked over to a table of tourists and started flirting with them.  That faculty member has done his best to avoid Cojocaru ever since.

349.    In March 2017, Cojocaru wrote a message to defendant Leo Dominguez, saying of
Haber, "She really needs to fuck as many middle aged men in the college as she can. . . . .  It's my
fault.  She wouldn't be able to do so if she didn't imitate me."



350.    On June 18, 2018, Cojocaru sent a text message to a female faculty member at John
Jay, attempting to persuade her to join Cojocaru in suing John Jay, writing that she has been
planning to do so for two years.



351.    Both Cojocaru and Haber had, and continue to have, motives to fabricate these false
allegations against Dr. Curtis, including (1) financial gain, laying the predicate for a lawsuit against
the College and CUNY, Dr. Curtis and others, (2) aspirations to become leaders of the #MeToo

movement, (3) their belief that Dr. Curtis was not sufficiently supportive of their efforts (a) to get into a PhD program, and (b) to teach, and be properly compensated for teaching, at the College, and (4) foreclosing the College's decision not to reappoint Cojocaru as an adjunct.

352.    Cojocaru's writings and communications make clear that she seeks recognition as a leader of the #MeToo movement.

353.    On Jan. 26, 2017, Cojocaru's Instant Message to a College faculty member referred to Haber as wanting to be a "survivor leader." See ¶ 318, above.

354.    On February 25, 2015, Cojocaru messaged Dr. Curtis saying that she felt she probably wouldn't get into any program, PhD or not. "I don't know what I can do. No job, no school prospects, no money . . . things are starting to look pretty bleak for me now."



355.    Dr. Curtis wrote Cojocaru positive recommendation letters for the University of Nevada at Las Vegas ("UNLV"), the University of Massachusetts at Amherst, and the College.

356.    At the College, Dr. Curtis had recently resigned from the Ph.D. program, and he was never on the admissions committee. That committee did not reach out to him, so he had no input and no role in the decision not to admit Cojocaru except for his positive letter of recommendation.

357.    Dr. Curtis advocated with a faculty member at Rutgers and helped Cojocaru get into the Rutgers Master's Program, but she burned her bridges there with her many complaints against faculty, *see* ¶¶ 309-10, 312 above, so that door to a Ph.D. was closed.

358.    By 2018, both Cojocaru and Haber had come to blame Dr. Curtis for their not being able to get teaching roles at John Jay in 2017.

359.    In December 2016, Cojocaru asked Dr. Curtis for teaching roles in the Law and Police Science Department, but there were no classes in that department that she was qualified to teach.

360.    In August 2017, Haber asked to teach freshman classes with Dr. Curtis, but because she did not have a Master's Degree, the Dean of Undergraduate Studies told Dr. Curtis, who had tried to accommodate Haber, that she would not be permitted to teach, only days before the beginning of the fall semester.

361.    In September 2017, Cojocaru, who had been teaching as an adjunct in the Department of Anthropology, found out that she was being paid less than what she had been told she was going to be paid.  She got very upset, complained vociferously, and accused Anthropology Department Chair Anthony Marcus and Dr. Curtis of being responsible for it.

362.    Dr. Curtis was not responsible for it, having had no role in setting her adjunct salary.

363.    In early April 2018, Cojocaru wrote to Dr. Marcus that if Jody Miller, a faculty member at Rutgers, and Barb Brents, a faculty member at UNLV, "tell enough people how 'unethical' I am, I will eventually get tired of trying to go get a Ph.D."  She asked if Dr. Marcus knew anything about this, writing that a mutual "friend" has implicated "you and Ric in this conspiratorial clusterfuck." Thus, Cojocaru apparently thought that Dr. Curtis was involved in telling people that she was unethical and that he was trying to prevent her from getting into a Ph.D. program.

**Re: news**

Claudia Cojocaru [ms.bufnitza@gmail.com]
**Sent:** Friday, April 06, 2018 7:56 PM
**To:** Amber Horning
**Cc:** Anthony Marcus

Hey Anthony, it looks like Barb Brents and Jody Miller have an ongoing psychotic episode in which they imagine that if they tell enough people how "ubethical" I am, I will eventually get tired of trying to go to get a Ph.D.. do you happen to know anything about it? A mutual "friend" happened to have also implicated you and Ric in this conspiratorial clusterfuck. I think this is worth investigating further, particularly given the ethical issues surrounding such behavior.

C

364.     Dr. Curtis never conspired against Cojocaru, never told people that Cojocaru was

unethical, and never tried to prevent her from getting into a Ph.D. program.

365.     On May 1, 2018, the Deputy Chair of the Anthropology Department told a new faculty

member being recruited to the Anthropology Department – who had already experienced

Cojocaru's attacks herself – that Anthropology Department Chair Marcus had decided that

Cojocaru will never teach in the Department again.

**From:** Johanna Lessinger <jlessinger@jjay.cuny.edu>
**Sent:** Tuesday, May 1, 2018 1:18:50 PM
**To:** Marta-Laura Suska
**Subject:** so sorry

Dear Marta,

Anthony Marcus just told me that the adjunct Claudia Cojocaru has been attacking you via vicious emails. I am so very sorry.

I know how disturbing this can be; last semester I was the focus of a similar unprovoked attack from Claudia: a series of slanderous emails to me, also circulated to others in the department, a public tirade full of vile language about me directed to the department secretary in a public space, a gossip campaign to defame me in the eyes of a group of younger women working elsewhere in the college. It has been painful and a bit scary.

At this point Anthony has determined that Claudia will not teach in the anthropology department next fall or in subsequent semesters.  She is far too unstable.  (The department secretary and
I have been dancing with joy.) That should put an end to the harassment.

366.     Dr. Curtis had no role in Dr. Marcus's determination not to permit Cojocaru to teach

anymore.

367.    On or about May 4, 2018, Cojocaru sent to a faculty member at the College a group

Facebook Messenger chat conversation revealing that Cojocaru and Haber were conspiring with

others to fabricate allegations against Dr. Curtis of "predatory conduct," culminating in this shared

Message: "if we nail him on unprofessional, predatory conduct, that'll do."



368.    By lodging false accusations of sexual misconduct against Dr. Curtis and others,

Cojocaru secured the ability to continue to teach at the College, because she could then portray as

retaliation any adverse employment action against her by the College for making those accusations,

thus exposing the College and CUNY to a lawsuit, like this one.

369.    In or about May 2018, Cojocaru and Haber filed false, fabricated and malicious

accusations of rape, attempted rape, sexual assault, assault, sexual harassment and other misconduct

against Dr. Curtis with the College.

370.    On or about July 19, 2018, Dr. Curtis was suspended by the President of the College,

without any prior notice or opportunity to defend himself from Cojocaru's and Haber's false,

fabricated malicious accusations.

371.    Beginning in or about September 2018, Cojocaru and Haber publicized those false,

fabricated and malicious accusations in the media, as Cojocaru had earlier on social media.

372.     Upon information and belief, Cojocaru and Haber also lodged criminal complaints, based on their false, fabricated and malicious accusations, with the New York City Police Department, the New York County District Attorney, and the New York State Inspector General. The investigation conducted by those law enforcement agencies concluded with no charges against Dr. Curtis and no findings adverse to him.

373.     Upon information and belief, the Title IX investigation conducted by the College, in derogation of Dr. Curtis's due process and other legal rights, failed to substantiate every Cojocaru and Haber allegation against Dr. Curtis of rape, attempted rape, sexual assault, drug incapacitation prior to sexual assault, forcible or unwanted touching, fondling or exposure of the leg, consensual sex, groin rubbing against their private parts, back massage or rubs, use of "electrocution" machine suction cups on thighs and lower back, unwelcome sexual advances, foot massages, "pimping" Cojocaru or Haber out to faculty members or on websites like seeking arrangements.com, and retaliatory conduct.

374.     Upon information and belief, the Title IX investigation also failed to substantiate each and every specific allegation by Cojocaru of sexual misconduct by Dr. Curtis of which he was afforded formal notice and an opportunity to defend, as well as Cojocaru's and Haber's charges of fostering and creating a hostile and discriminatory work environment, discouraging the use of prescribed medications, and engaging in "exploitative" physical contact.

375.     Nevertheless, on or about May 15, 2019, the President of the College publicly announced her intention to bring disciplinary proceedings against Dr. Curtis, seeking his termination.

376.     On or about October 30, 2019, those termination proceedings were initiated against Dr. Curtis, and are currently ongoing.

## FIRST COUNTERCLAIM
### (Defamation and Defamation *Per Se*)
### *Against Plaintiffs Cojocaru and Haber*

377.    Counterclaimant Curtis hereby repeats, reiterates and re-alleges each and every allegation contained in each of paragraphs 306-76 as if fully set forth herein.

378.    In "exclusive, hours-long interviews," Cojocaru and Haber stated to and published to third parties, specifically, reporters of the New York Post (including Sara Dorn and Melissa Klein), and caused the New York Post to re-publish, on or about September 22, 2018, the following statements of fact regarding Dr. Curtis under the headline "College professors allegedly sold drugs and 'pimped' out students":

379.    Cojocaru and Haber stated that "[v]eteran professors" at John Jay College, including Dr. Curtis, "ran a lawless den of depravity called 'the swamp,'" where they allegedly "'pimped' out and sexually preyed on students."

380.    Cojocaru and Haber "described how the charismatic CUNY profs targeted them as vulnerable undergraduates and lured them" into their "circle of acolytes, only to sexually assault them and attempt to have them sexually service professors at other colleges – and worse."

381.    Haber stated that when she "arrived on the West 59th Street campus in 2013," she "was soon introduced to a sinister world she never imagined while growing up in a Hasidic family in Rockland County."

382.    Cojocaru and Haber stated that Dr. Curtis "was the ring leader" of this lawless den of depravity and sinister world.

383.    Haber stated that "Ric was magnetic and introduced me to a world of deviance that I had no idea existed."

384.    Haber stated that "Ric was an expert at sniffing out those vulnerabilities[.]"

385.   Haber stated that Dr. Curtis "encouraged her to have sex with his academic colleagues."

386.   Haber stated that Dr. Curtis "encouraged her to have sex with a professor who was being recruited as a department head."

387.   Cojocaru stated that Dr. Curtis "groped her while at another professor's party in Brooklyn."

388.   Haber stated that Dr. Curtis "convinced her to stop taking medication, including antidepressants, for her bipolar disorder."

389.   Haber stated that "the "toxic environment" at John Jay led her to become suicidal."

390.   Haber stated that Dr. Curtis was one of those who "killed me spiritually in a way."

391.   The aforesaid statements of fact regarding Dr. Curtis were false.

392.   The aforesaid statements of fact regarding Dr. Curtis were defamatory, in that they exposed and tended to expose Dr. Curtis to public contempt, ridicule, aversion and disgrace, and induce an evil opinion of him in the minds of right thinking persons and to deprive him of their friendly intercourse in society.

393.   The defamatory nature of these statements of fact regarding Dr. Curtis appears on the face of the statements.

394.   The aforesaid statements regarding Dr. Curtis charged him with serious crimes.

395.   The aforesaid statements regarding Dr. Curtis injured, tended to injure, and were calculated to injure, Dr. Curtis in his business, trade or profession.

396.   Cojocaru and Haber made and published the aforesaid statements regarding Dr. Curtis knowing they were false when made.

397.   Cojocaru and Haber made and published the aforesaid statements with malice.

398.    The aforesaid statements regarding Dr. Curtis constitute defamation, libel and slander and *per se*, in that they: (i) accused Dr. Curtis of a crime; (ii) exposed him to public contempt, ridicule, aversion and disgrace, and induced an evil opinion of him in the minds of right-thinking persons; and (iii) tended to injure him in his business and professional capacity as a scholar, researcher, teacher and harm reduction advocate, and as a tenured full Professor at the College.

399.    On or about September 27, 2018, Haber met with representatives of the New York City Police Department's Special Victims Unit, the New York County District Attorney's sex crimes unit, and the New York State Inspector General's Office for four hours and republished some or all of the aforesaid false, defamatory and malicious statements.

400.    On or about September 29, 2018, Haber stated to and re-published to third parties, specifically, reporters of the New York Post (including Sara Dorn and Melissa Klein) some or all of the aforesaid false, defamatory and malicious statements, and caused the New York Post to re-publish, on or about September 29, 2018, the following statements of fact regarding Dr. Curtis under the headline "Professors accused of pimping out students got nearly $500K to study prostitution":

> ➢ that "the John Jay College professors accused of pimping out their students," including Dr. Curtis, "raked in more than half a million dollars in government money to study prostitution."
>
> ➢ that "[f]our professors at the publicly funded criminal justice college," including Dr. Curtis, "brought the underworld they studied into the hallways of John Jay."
>
> ➢ that "[a]ccusations of rape, sexual harassment and facilitating prostitution first surfaced several weeks ago in the written complaints of two John Jay graduates [Cojocaru and Haber], which were shared with The Post and authorities."

> that "[p]rostitution research was a cash cow for two of the professors," including Dr. Curtis.

401. The aforesaid statements of fact regarding Dr. Curtis were false.

402. The aforesaid statements of fact regarding Dr. Curtis were defamatory, in that they exposed and tended to expose Dr. Curtis to public contempt, ridicule, aversion and disgrace, and induce an evil opinion of him in the minds of right thinking persons and to deprive him of their friendly intercourse in society.

403. The defamatory nature of the aforesaid statements of fact regarding Dr. Curtis appears on the face of the statements.

404. The aforesaid statements regarding Dr. Curtis charged him with serious crimes.

405. The aforesaid statements regarding Dr. Curtis injured, tended to injure, and were calculated to injure, Dr. Curtis in his business trade or profession.

406. Cojocaru and Haber made and published the aforesaid statements regarding Dr. Curtis knowing they were false when made.

407. Cojocaru and Haber made and published the aforesaid statements with malice.

408. The aforesaid statements regarding Dr. Curtis constitute libel, slander and defamation *per se*, in that they: (i) accused Dr. Curtis of a crime; (ii) exposed him to public contempt, ridicule, aversion and disgrace, and induced an evil opinion of him in the minds of right-thinking persons; and (iii) tended to injure him in his business and professional capacity as a scholar, researcher, teacher and harm reduction advocate, and as a tenured full Professor at the College.

409. Cojocaru and Haber have conspired with each other, and with third parties, to publish their false, defamatory and malicious statements concerning Dr. Curtis, with a knowing or reckless disregard of their falsity.

410.     Cojocaru, Haber and their co-conspirators have acted out of ill-will and spite, with the specific intent and design that their statements be a source for the media so that the media will publish their false, defamatory and malicious statements concerning Dr. Curtis, in order to publicly impugn Dr. Curtis as, *inter alia*, a deviant sexual predator.

411.     Cojocaru's and Haber's campaign of defamation against Dr. Curtis, assisted by and promoted by others, consists of a combination of: (i) out of court statements and; (ii) statements made to College administrators, Title IX officers and investigators, and in court pleadings, all of which were knowingly false and instituted with malice, for the purpose of publicly disseminating libelous and defamatory statements about Dr. Curtis via media statements which refer to those statements and pleadings, and causing the repeated republication of their false, defamatory and malicious allegations.

412.     Cojocaru and Haber are liable for the defamatory statements of their authorized agents and co-conspirators.

413.     Cojocaru and Haber intended their false statements to be widely published and disseminated on television, through newspapers, by word of mouth, and on the internet. As they intended, Cojocaru's and Haber's statements were published and disseminated in the New York and national press, as well as on the internet.

414.     The investigation conducted by the District Attorney and the State Inspector General as a result of the aforesaid false statements concluded with no charges and no findings adverse to Dr. Curtis.

415.     However, as a direct and proximate result of plaintiffs Cojocaru's and Haber's tortious, defamatory and malicious conduct, and the publication of their false and defamatory statements in the press, thirty academics and advocates wrote a letter, also publicized in the New York Post,

calling on John Jay College to examine the sex research done by Dr. Curtis and others, and to look for more "victims," on the assumption that the false and defamatory statements about Dr. Curtis and others were true.

416.   According to the New York Post, in an article published on or about October 6, 2018, the letter from the academics and advocates noted that "The allegations raised about rape and sexual abuse against Professors Ric Curtis . . . 'raise concerns, for us, as colleagues, researchers, activists, and social service providers who work with people engaged in sexual exchange, that their research may also be tainted by sexual violence[.]"

417.   According to that same New York Post article, "Referencing how 'The Post broke the news' about accusations two profs allegedly engaged in rape, pimping out students . . . the signers demanded the university investigate whether students, staff or study subjects were victims of sexual misconduct during the profs' past research."

418.   According to that same New York Post article, "The accusations have rocked the John Jay campus[.]"

419.   As a direct and proximate result of plaintiffs Cojocaru's and Haber's tortious, defamatory and malicious conduct, and the publication of their false and defamatory statements in the press, Dr. Curtis was suspended by the President of the College, who has also commenced proceedings to terminate Dr. Curtis, and he has suffered substantial damages in the form of *inter alia*, deprivation of his ability to teach and do research, of his students, of his projects, and of his grants; he has suffered economic loss, grievous damage to his reputation and harm to his career, lost business and professional opportunities, isolation from his academic and social community, and other damages, in an amount to be proven at trial.

420.     While it is not necessary to plead special damages, Dr. Curtis has suffered special

damages as a direct and proximate result of plaintiffs Cojocaru's and Haber's tortious, defamatory

and malicious conduct.

421.     Because plaintiffs Cojocaru and Haber's conduct was wanton and willful, and they acted

out of ill-will and spite, with malice, and with reckless disregard of Dr. Curtis's rights, Dr. Curtis is

entitled to an award of punitive damages.

## SECOND COUNTERCLAIM
### (Defamation and Defamation *Per se*)
### *Against Plaintiffs Cojocaru and Haber*

422.     Counterclaimant Curtis hereby repeats, reiterates and re-alleges each and every

allegation as contained in each of paragraphs 306-421 as if fully set forth herein.

423.     On August 2, 2018, Cojocaru published the following statement on her Instagram

account: "serial sexual predator and fake PhD gets to be suspended without pay while his victims

struggle to make ends meet."

424.     The context of Cojocaru's statement makes clear that she is referring to Dr. Curtis and is

stating that he is a "serial sexual predator" with a "fake PhD."

425.     On or about May 30, 2019, Cojocaru published the following statement on her Twitter

feed: "[t]he swamp @JohnJayCollege was crawling with self-serving/unhinged/entitled men & their

enablers-a cult of vicious, angry, abusive sexual predators."

426.     The context of Cojocaru's statements, in this tweet and others prior thereto, make clear

that she was stating to her Twitter readers that Dr. Curtis was a "self-serving/unhinged/entitled"

man who led "a cult of vicious, angry, abusive sexual predators."

427.     On or about June 30, 2019, Cojocaru published the following statement on her Twitter

feed:  "the institution [John Jay College] + its satellites (I'm looking at you @ManhattanDA)

continued to operate to protect these men (see John Jay college scandal) who engendered a culture of control, abuse, and sexual violence on campus (and outside)."

428.   The context of Cojocaru's statements, in this tweet and others prior thereto, make clear that she was stating to her Twitter readers that Dr. Curtis "engendered a culture of control, abuse, and sexual violence on campus (and outside)."

429.   On or about July 8, 2019, Cojocaru republished on her Twitter feed a Daily Beast story about Jeffrey Epstein, stating that "[t]his story reveals that all these rapists and traffickers have somethings in common."  She then published the following statements on her Twitter feed:  "We only have to look at cases where men in positions of power gain trust-men like catholic priests, university professors . . . .  These men have power and privileges, complete with a network of enablers and accomplices, shielding them from accountability for decades.  Some even have institutional legitimacy, like the disgraced @JohnJayCollege professors."

430.   Immediately below those statements, Cojocaru republished the September 22, 2018 New York Post story, referred to in ¶¶ 378-90 above, including a picture of Dr. Curtis and this excerpt from that story:  "Veteran professors at the Manhattan school renowned for training future crime-fighters ran a lawless den of depravity called "the swamp," where . . ."

431.   The context of Cojocaru's statements, in this tweet and others prior thereto, make clear that she was stating to third parties that Dr. Curtis is a "rapist" and "trafficker" who ran "a lawless den of depravity" at the College.

432.   On or about November 18, 2019, after republishing various stories about various professors at other universities who have been charged with skimming money and money laundering or engaging in "sexually inappropriate and predatory behavior," Cojocaru republished on her Twitter feed the September 29, 2018 New York Post story referred to in ¶ 400 above, under

the partial headline, "Professors accused of pimping out students got n…."  Above the republished story, Cojocaru stated: "However, the above mentioned bad academics' deeds pale in comparison to #MyJohnJay's very own professors."

433.    The context of Cojocaru's statements, in this tweet and others prior thereto, make clear that she was stating to third parties that Dr. Curtis had engaged in "sexually inappropriate and predatory behavior" and had "pimped out" his students.

434.    The aforesaid statements of fact regarding Dr. Curtis were false.

435.    The aforesaid statements of fact regarding Dr. Curtis were defamatory, in that they exposed and tended to expose Dr. Curtis to public contempt, ridicule, aversion and disgrace, and induce an evil opinion of him in the minds of right thinking persons and to deprive him of their friendly intercourse in society.

436.    The defamatory nature of the aforesaid statements of fact regarding Dr. Curtis appears on the face of the statements.

437.    The aforesaid statements regarding Dr. Curtis charged him with serious crimes.

438.    The aforesaid statements regarding Dr. Curtis injured, tended to injure, and were calculated to injure, Dr. Curtis in his business trade or profession.

439.    Cojocaru made and published the aforesaid statements regarding Dr. Curtis knowing they were false when made.

440.    Cojocaru made and published the aforesaid statements with malice.

441.    Cojocaru's false statements constitute libel, slander and defamation *per se*, in that they: (i) accused Dr. Curtis of a crime; (ii) exposed him to public contempt, ridicule, aversion and disgrace, and induced an evil opinion of him in the minds of right-thinking persons; and (iii) tended

68

to injure him in his professional capacity as a scholar, researcher, teacher and harm reduction advocate, and as a tenured full Professor at the College.

442.    As a direct and proximate result of Cojocaru's tortious, defamatory and malicious conduct, and the publication of her false and defamatory statements on social media, in the press, Dr. Curtis was suspended by the President of the College, who has also commenced proceedings to terminate Dr. Curtis, and he has suffered substantial damages in the form of *inter alia*, deprivation of his ability to teach and do research, of his students, of his projects, and of his grants; economic loss, grievous damage to his reputation and harm to his career, lost business and professional opportunities, isolation from his academic and social community, and other damages in an amount to be proven at trial.

443.    While it is not necessary to plead special damages, Dr. Curtis has suffered special damages as a direct and proximate result of plaintiffs Cojocaru's and Haber's tortious, defamatory and malicious conduct.

444.    Because plaintiffs Cojocaru and Haber's conduct was wanton and willful, and they acted out of ill-will and spite, with malice, and with reckless disregard of Dr. Curtis's rights, Dr. Curtis is entitled to an award of punitive damages.

### THIRD COUNTERCLAIM
#### (Tortious Interference with Contractual and Business Relations)
##### *Against Plaintiffs Cojocaru and Haber*

445.    Counterclaimant Curtis hereby repeats, reiterates and re-alleges each and every allegation as contained in each of paragraphs 306-444 as if fully set forth herein.

446.    John Jay College of Criminal Justice ("the College") is and was at all times material herein a senior college of the City University of New York ("CUNY").

447.    In or about 2006, Dr. Curtis was appointed a full Professor in the Department of Anthropology of the College.

448.    At all times material herein, Dr. Curtis was a Professor in the Department of Anthropology of the College.

449.    At all times material herein, Dr. Curtis had a valid, enforceable contractual relationship with the College and CUNY, by virtue of his appointment and position as a Professor at the College, and by virtue of the applicable contract(s) negotiated on Dr. Curtis's behalf by and through the Professional Staff Congress/CUNY ("PSC/CUNY"), the union or professional association of CUNY Professors and other Instructional Staff, recognized by CUNY as the exclusive collective negotiating representative of those Professors and Instructional Staff, including Dr. Curtis, under the Public Employees' Fair Employment Act of the State of New York.

450.    At all times material herein, by virtue of his appointment and position as Professor and the aforesaid contracts, Dr. Curtis had full tenure rights and the rights to academic freedom, and all other rights and privileges under those contracts and that normally accompany that academic position.

451.    At all times material herein, Dr. Curtis was in a business and professional relationship with the College and CUNY in which he enjoyed a tenured academic position that afforded him opportunities, *inter alia*, to teach and mentor students and junior faculty; to seek funding for, conduct, and publish research; to associate freely with other faculty and experts both inside and outside the College and CUNY; to receive professional recognition for his academic work and contributions to the field of anthropology; and to seek other paid and unpaid professional positions appropriate to an academic of his seniority and accomplishment.

452.    At all times material herein, Cojocaru and Haber knew of the contractual, business and professional relationship between Dr. Curtis and the College and CUNY.

453.    Cojocaru and Haber, acting out of spite and with ill-will and malice, have made and presented to the College and CUNY knowingly false claims of rape, sexual assault, assault and unwelcome sexual harassment by Dr. Curtis.

454.    Cojocaru and Haber, acting out of spite and with ill-will and malice, continue to make and present to the College and CUNY knowingly false claims of rape, sexual assault, assault and unwelcome sexual harassment by Dr. Curtis.

455.    In or about July 2018, Cojocaru's and Haber's knowingly false claims caused the College and CUNY to suspend Dr. Curtis from his position as Professor, without previous notice or opportunity to be heard and to defend himself, and without any preliminary fact-finding.

456.    On or about July 19, 2018, Cojocaru's and Haber's knowingly false claims caused the College and CUNY to suspend Dr. Curtis from his position as a tenured full Professor at the College, to ban him from the College and its grounds and buildings, including his office; to ban him from all College activities; to deprive him of his students and the ability to teach and mentor them; to strip him of his ability to associate freely with other faculty, to conduct his research projects and activities; and generally to pursue his academic work, to fulfill the duties and responsibilities of his position as Professor of Anthropology, and to exercise the rights and privileges of that position.

457.    On or about May 15, 2019, Cojocaru's and Haber's knowingly false claims caused the President of the College to announce that she intended to commence proceedings to terminate Dr. Curtis.

458.    On or about October 30, 2019, Cojocaru's and Haber's knowingly false claims caused the President of the College to commence those termination proceedings.

459.    By presenting their false and malicious accusations to the College and CUNY, Cojocaru and Haber have intentionally procured the College's and CUNY's breach of Dr. Curtis's contractual, business and professional relationship with the College and CUNY.

460.    Cojocaru's and Haber's tortious interference with these contractual, business and professional relations has damaged Dr. Curtis by, *inter alia,* depriving him of his position, rights, duties and responsibilities of his position and appointment as a Professor at the College since July 2018, and continuing; depriving him of his ability to teach students, to mentor students and junior faculty, to conduct his projects and research, to apply for grants for new projects, and to engage in professional activities suitable and appropriate for a senior tenured Professor, respected researcher and former chair of three academic departments at the College. Dr. Curtis has thus been deprived of future prospects for professional opportunities, and he has suffered economic loss, grievous damage to his reputation and harm to his career, isolation from his academic and social community, and other damages.

461.    Cojocaru's and Haber's conduct was malicious, aggravated, outrageous, willful and wanton, and in conscious and deliberate disregard of Dr. Curtis's rights and interests, and Dr. Curtis is entitled to an award of punitive damages.

WHEREFORE, Defendant/Counterclaimant Curtis prays that the Court enter judgment in his favor and against Plaintiffs for the following relief:

A.    A judgment dismissing Plaintiffs' Amended Complaint against Defendant/ Counterclaimant in its entirety;

B.    An award of damages against Plaintiffs on each of the Counterclaims, in amounts to be determined at trial, plus interest;

C.  An award of punitive damages against each Plaintiff on each of the Counterclaims, in

amounts to be determined at trial, plus interest;

D.  Prejudgment interest on all amounts due;

E.  An award of Defendant and Counterclaimant's reasonable attorneys' fees and costs; and

F.  Such other and further relief as this Court may deem just and proper.

Dated:  New York, New York
     March 6, 2020                              Respectfully submitted,

                                           HERBST LAW PLLC

                                         /s/ Robert L. Herbst
                                         Robert L. Herbst, Esq.
                                       420 Lexington Avenue, Suite 300
                                       New York, New York 10170
                                       Telephone: (646) 543-2354
                                       Facsimile: (888) 482-4676
                                       rherbst@hersbstlaw.com
                                       *Attorneys for Defendant*