UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------- x
CLAUDIA COJOCARU and NAOMI HABER,  :
:
                            Plaintiffs,  :   **AMENDED[1] OPINION AND**
:   **ORDER ON MOTION TO**
  -against-  :   **DISMISS COUNTERCLAIMS**
:
CITY UNIVERSITY OF NEW YORK d/b/a JOHN  :   19 Civ. 5428 (AKH)
JAY COLLEGE OF CRIMINAL JUSTICE, et al.,  :
:
                            Defendants.  :
:
------------------------------------------------------------- x

ALVIN K. HELLERSTEIN, U.S.D.J.:

        Claudia Cojocaru and Naomi Haber (collectively, "Plaintiffs") brought this suit alleging that several professors, Defendants Ric Curtis, Anthony Marcus, Leonardo Dominguez, and Barry Spunt (collectively, the "Individual Defendants"), subjected them to gender discrimination, retaliation, and for some Individual Defendants, gender-based violence. They further allege that their university, City University of New York d/b/a John Jay College of Criminal Justice ("John Jay"), failed to investigate properly and take corrective action. Defendants Curtis, Dominguez, and Spunt (collectively, the "Counterclaim Defendants") brought counterclaims for defamation, and Curtis brought an additional counterclaim for tortious interference with contract and business relations.

        Plaintiffs move to dismiss the counterclaims. I grant the motion in part and deny it in part. My reasons follow.

---

[1] This order has been amended to correct the name of City University of New York d/b/a John Jay College of Criminal Justice, which was misidentified as City College of New York d/b/a John Jay College of Criminal Justice in the first paragraph of the Court's order dated July 2, 2020. ECF No. 99. The order remains unchanged otherwise

1

## BACKGROUND[2]

Plaintiffs were undergraduate students at John Jay, Cojocaru, between 2012 and 2014, and Haber, between 2013 and 2017. Cojocaru also served as an adjunct professor from 2017 to 2019. During Plaintiffs' time at John Jay, Defendants Curtis, Marcus, and Spunt were professors, and Defendant Dominguez was an adjunct professor.

The offices of Curtis, Marcus, and Dominguez were located in a suite professors called the "Swamp." In the Swamp, professors allegedly referred to students using offensive terms like "bitch" and "slut," mocked students who were victims of sexual violence, made sexual comments about students, and openly sold and used illegal drugs. Plaintiffs claim that on multiple occasions they were subjected to assaults and/or unwanted sexual advances by the Individual Defendants. For example, according to Plaintiffs' Amended Complaint, Curtis encouraged Cojocaru to drink alcohol before sexually assaulting her, Spunt groped Cojocaru, Marcus jumped onto a bed with Cojocaru and punched her multiple times, Curtis tried to pressure Haber into having sex with other professors, Curtis and Dominguez groped Haber, and Marcus raped Haber.

Beginning in 2015, Plaintiffs complained to John Jay staff about the Individual Defendants' behavior, but staff did not act on those complaints. In 2018, Plaintiffs filed complaints with John Jay's Title IX office and, subsequently, with John Jay's Deputy Director of Compliance and Diversity and John Jay's Executive Counsel. Plaintiffs say the resulting investigation was biased, incomplete, and marred by improper conduct, and caused Cojocaru to suffer trauma, causing Cojocaru's psychiatrist to recommend that she stopped sitting for in-

---

[2] Facts are taken from Plaintiffs' Amended Complaint and from the Counterclaim Defendants' respective counterclaims. For the purpose of adjudicating Plaintiffs' motion to dismiss the counterclaims, I assume all factual allegations in the Counterclaim Defendants' answers and counterclaims to be true. *Khodeir v. Sayyed*, 323 F.R.D. 193, 198, 200-01 (S.D.N.Y. 2017).

person interviews during the investigation. The complaint alleges that John Jay officials said they would accommodate Cojocaru but then said that her failure to appear for interviews damaged her credibility. At the conclusion of the investigation, John Jay announced that it would initiate disciplinary procedures to terminate the Individual Defendants.

In the Amended Complaint, Plaintiffs bring claims against John Jay for gender discrimination and retaliation in violation of Title IX, Title VII, the New York State Human Rights Law ("NYSHRL"), and the New York City Human Rights Law ("NYCHRL"), and for violation of the Equal Protection Clause of the Fourteenth Amendment. Cojocaru also brings claims against John Jay for disability discrimination in violation of the NYSHRL, NYCRL, and Americans with Disability Act ("ADA"). Plaintiffs bring claims against all Individual Defendants for aiding and abetting gender discrimination in violation of the NYSHRL and NYCHRL; against Curtis, Marcus, and Dominguez for violation of the Gender Motivated Violence Act ("GMVA"); and against Curtis, Spunt, and Dominguez for retaliation in violation of the NYSHRL and NYCHRL.

In their respective answers to the Amended Complaint, Curtis, Dominguez, and Spunt deny Plaintiffs' allegations and bring counterclaims against Plaintiffs. The Counterclaim Defendants say that Plaintiffs have initiated sexual conversations with professors, that Cojocaru has a long history of making complaints about others in academia, and that Plaintiffs had ulterior motives to fabricate allegations.

All three Counterclaim Defendants bring a claim for defamation, libel, and slander *per se* against Plaintiffs in connection with an interview they gave to the *New York Post*. The interview resulted in an article published on September 22, 2018 (the "Article"), which was titled "College professors allegedly sold drugs, 'pimped' out students." The Article contained

many of the same accusations as those in the Amended Complaint, including that professors sexually assaulted Plaintiffs and encouraged them to have sex with other professors. In his first counterclaim, Curtis also highlights that Plaintiffs repeated similar allegations in meetings with the New York City Police Department's Special Victims Unit, the New York County District Attorney's sex crimes unit, and the New York State Inspector General's Office, and later in an additional interview with the *New York Post*. The second *New York Post* interview resulted in an article titled "Professors accused of pimping out students got nearly $500K to study prostitution." In their counterclaim, Dominguez and Spunt describe text messages between Cojocaru and her former fiancé. In those text messages, Cojocaru falsely claimed that Dominguez sexually assaulted a student, was part of a conspiracy to commit statutory rape of underage sex workers, and may have killed a sex worker. She also falsely claimed that Spunt groped her.

Additionally, Curtis brings a second counterclaim against Plaintiffs for defamation, libel, and slander *per se* in connection with Plaintiffs' social media posts. On Instagram and Twitter, Cojocaru allegedly made statements such as "serial sexual predator and fake PhD gets to be suspended without pay while his victims struggle to make ends meet." In reaction to a news story about Jeffrey Epstein, Cojocaru wrote, "We only have to look at cases where men in positions of power gain trust-men like catholic priests, university professors . . . . These men have power and privileges, complete with a network of enablers and accomplices, shielding them from accountability for decades. Some even have institutional legitimacy, like the disgraced @JohnJayCollege professors."

Finally, Curtis brings a counterclaim against Plaintiffs for tortious interference with contractual and business relations. He alleges that Plaintiffs' false accusations led John Jay

4

to suspend him and commence termination proceedings, in breach of his contractual, business, and professional relationship with John Jay and the City University of New York.

## DISCUSSION

"The pleading standard applicable to complaints under Federal Rule of Civil Procedure 12(b)(6) applies equally to counterclaims." *Burton v. Label, LLC*, 344 F. Supp. 3d 680, 691-92 (S.D.N.Y. 2018). Thus, the Counterclaim Defendants' counterclaims "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). For purposes of this motion, I assume all factual allegations in the Counterclaim Defendants' answers and counterclaims are true, and I draw all reasonable inferences in their favor. *Khodeir v. Sayyed*, 323 F.R.D. 193, 198, 200-01 (S.D.N.Y. 2017).

### I.  The Counterclaim Defendants' Defamation Claims

"Defamation is the injury to one's reputation either by written expression, which is libel, or by oral expression, which is slander." *Idema v. Wager*, 120 F. Supp. 2d 361, 365 (S.D.N.Y. 2000). "Under New York law, the elements of a defamation claim are 'a false statement, published without privilege or authorization to a third party, constituting fault . . . and it must either cause special harm or constitute defamation per se.'" *Peters v. Baldwin Union Free Sch. Dist.*, 320 F.3d 164, 169 (2d Cir. 2003) (quoting *Dillon v. City of New York*, 261 A.D.2d 34, 38 (1st Dep't 1999)). Plaintiffs assert that Dominguez and Spunt's claims are time barred as to certain statements, that all the alleged defamatory statements are privileged, that certain statements are not actionable because they are statements of opinion, and that all Counterclaim Defendants fail to allege special damages or defamation *per se*.

### A. Timeliness

The statute of limitations for a defamation claim brought under New York law is one year, running from the date of the publication of the alleged defamatory statement. *See* N.Y. C.P.L.R. 215(3); *Enigma Software Grp. USA, LLC v. Bleeping Computer LLC*, 194 F. Supp. 3d 263, 276 (S.D.N.Y. 2016). "A defense or counterclaim is not barred if it was not barred at the time the claims asserted in the complaint were interposed . . . ." N.Y. C.P.L.R. 203(d). In other words, "under New York law, the statute of limitations on all counterclaims is tolled upon filing of the plaintiffs' complaint." *Weiss v. La Suisse*, 161 F. Supp. 2d 305, 314 (S.D.N.Y. 2001); *see also Lessord v. Gen. Elec. Co.*, 258 F. Supp. 2d 209, 212 (W.D.N.Y. 2002) (federal courts exercising supplemental jurisdiction apply state tolling rules to state law claims). However, "CPLR 203(d) does not apply to counterclaims asserted in an amended answer." *Coleman, Grasso & Zasada Appraisals Inc. v. Coleman*, 246 A.D.2d 893, 894 (3d Dep't 1998); *see also Rosenfeld v. City of New York*, No. 06-CV-1979, 2009 WL 10701874, at *3 (E.D.N.Y. Jan. 11, 2009) ("[A]lthough the tolling provision of subsection 203(d) clearly applies to counterclaims asserted in a defendant's initial answer to the original complaint, courts have typically not considered it to be applicable to counterclaims asserted in subsequent pleadings filed by a defendant – i.e., either in an answer to an amended complaint or in an amended answer to the original complaint.").

Plaintiffs argue that Dominguez and Spunt's defamation claims must be dismissed to the extent they are based on Cojocaru's text messages to her former fiancé. Cojocaru allegedly sent the text messages on August 6, 2018, October 11, 2018, and November 29, 2018. Plaintiffs filed their first complaint (the "Initial Complaint") on June 10, 2019. In their first answers and counterclaims (the "Initial Answers") filed in response to the Initial Complaint,

6

Dominguez and Spunt did not make allegations about the text messages. *See* ECF Nos. 46, 47. Their counterclaims in the Initial Answers were based only on the alleged *New York Post* interviews. On December 20, 2019, Dominguez and Spunt filed amended answers and counterclaims (the "Amended Answers") in response to the Initial Complaint. *See* ECF Nos. 52, 53. In those Amended Answers, Dominguez and Spunt raised for the first time the issue of the text messages.[3] Because the text messages were not raised in the Initial Answers, Plaintiffs argue that these allegations were not tolled as of the date of the Initial Complaint and are therefore time barred.

Plaintiffs concede that any counterclaims asserted in the Initial Answers are timely under C.P.L.R. 203(d), and Dominguez and Spunt concede that they did not raise the issue of the text messages until the Amended Answers. Thus, the key question is whether the allegations regarding text messages in the Amended Answers relate back to the Initial Answers. I hold that they do not.

Under Federal Rule of Civil Procedure 15(c)(1)(B), "[a]n amendment to a pleading relates back to the date of the original pleading when . . . the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out--or attempted to be set out--in the original pleading."[4] "An amendment will not relate back if it sets forth a new set of operational facts; it can only make more specific what has already been alleged." *Pruiss v. Bosse*, 912 F. Supp. 104, 106 (S.D.N.Y. 1996). Courts in this district have held that defamation

---

[3] Plaintiffs filed the operative complaint, the First Amended Complaint, on February 6, 2020. In their answer and counterclaims filed in response to the First Amended Complaint, Dominguez and Spunt reiterated their allegations regarding the text messages.

[4] "Where a state claim is at issue for purposes of relation back, FRCP 15(c)(1) requires that a Court apply the more permissive standard as between state and federal law." *Palatkevich v. Choupak*, 152 F. Supp. 3d 201, 225 n.18 (S.D.N.Y. 2016). As relevant here, federal and state law impose similar standards, looking at whether the claims in the amended pleading arise out of the same transaction or occurrence as those in the original pleading. *Compare* Fed. R. Civ. P. 15(c)(1)(B), *with* N.Y. C.P.L.R. 203.

claims do not relate back to a prior pleading where they allege "new instances of defamation." *Id.*; *see also Purnell v. Diesso*, No. 94 Civ. 4361, 1996 WL 37770, at *2 (S.D.N.Y. Jan. 31, 1996) ("With respect to claims of defamation and libel, each publication gives rise to a separate cause of action and does not relate back to an earlier publication."); *Kirkland v. City of Peekskill*, 634 F. Supp. 950, 952-53 (S.D.N.Y. 1986) (declining to allow relation back where new claims involved different conversation than claims in prior pleading). This is true even where the content of the alleged defamatory statements is the same. *See Pruiss*, 912 F. Supp. at 106. New York courts applying C.P.L.R. 203(f) hold similarly. *Williams v. Varig Brazilian Airlines*, 169 A.D.2d 434, 437 (1st Dep't 1991) (allegations of defamation did not relate back to allegations from earlier time period). While the alleged text messages concerned the same general subject matter as the *New York Post* interviews, they were a separate publication, directed toward a different recipient, and included some distinct accusations. Therefore, those allegations do not relate back to the Initial Answers and are time barred because they were asserted more than one year after their publication.

### B. Privilege

Plaintiffs contend that their *New York Post* interviews, social media posts, and text messages are privileged because they are reports on official proceedings, including the investigations conducted by CUNY, the New York County District Attorney's Office, and the New York State Inspector General's Office. Under New York Civil Rights Law § 74, "[a] civil action cannot be maintained against any person, firm or corporation, for the publication of a fair and true report of any judicial proceeding, legislative proceeding or other official proceeding, or for any heading of the report which is a fair and true headnote of the statement published." "The purpose of the statute in part is to implement the public policy in favor of encouraging

publication and dissemination of judicial decisions and proceedings as being in the public interest." *Beary v. West Publ'g Co.*, 763 F.2d 66, 68 (2d Cir. 1985). The privilege extends to "statements published not only by the media, but also by parties or their counsel." *Wexler v. Allegion (UK) Ltd.*, 374 F. Supp. 3d 302, 311 (S.D.N.Y. 2019).

At this stage, the Court cannot determine as a matter of law that the privilege applies. To be subject to the privilege, the alleged statements must be a "fair and true" account of the proceeding, meaning they must be "substantially accurate." *Holy Spirit Ass'n for Unification of World Christianity v. N.Y. Times Co.*, 399 N.E.2d 1185, 1187 (N.Y. 1979). Additionally, "'[i]f context indicates that a challenged portion of a publication focuses exclusively on underlying events, rather than an official proceeding relating to those events, that portion is insufficiently connected to the proceeding to constitute a report of that proceeding.'" *Wexler*, 374 F. Supp. 3d at 312 (quoting *Fine v. ESPN, Inc.*, 11 F. Supp. 209, 217 (N.D.N.Y. 2014)). These are all context-dependent and disputed questions of fact that cannot be resolved at the pleading stage, particularly where the Plaintiffs do not provide the full content of the purported official proceedings giving rise to the privilege. *See Wexler*, 374 F. Supp. 3d at 313-14 (declining to grant summary judgment where it was unclear whether statements in article were reporting on allegations in lawsuit or making independent accusation); *Wenz v. Becker*, 948 F. Supp. 319, 324 (S.D.N.Y. 1996) (finding material issues of fact as to whether report of proceedings, when compared against court documents from proceedings, was fair and true).

**C. Opinion**

"Since falsity is a necessary element of a defamation cause of action and only 'facts' are capable of being proven false, 'it follows that only statements alleging facts can properly be the subject of a defamation action.'" *Gross v. N.Y. Times Co.*, 623 N.E.2d 1163,

1167 (N.Y. 1993) (quoting *600 West 115th Street Corp. v. Von Gutfeld*, 603 N.E.2d 930, 934 (N.Y. 1992)). As a result, a statement of pure opinion cannot be the subject of a defamation claim. *Davis v. Boeheim*, 22 N.E.3d 999, 1004 (N.Y. 2014). Whether a statement expresses fact or opinion is a question of law for the court and "must be answered on the basis of what the average person hearing or reading the communication would take it to mean." *Steinhilber v. Alphonse*, 501 N.E.2d 550, 553 (N.Y. 1986). The court should consider:

> (1) whether the specific language in issue has a precise meaning which is readily understood; (2) whether the statements are capable of being proven true or false; and (3) whether either the full context of the communication in which the statement appears or the broader social context and surrounding circumstances are such as to signal . . . readers or listeners that what is being read or heard is likely to be opinion, not fact.

*Gross*, 623 N.E.2d at 1167 (internal quotation marks omitted).

Plaintiffs contend that some of their alleged statements are statements of opinion and therefore are not actionable for defamation. *See* Pl. Br.[5] at 13-14 (cataloguing purported statements of opinion). For example, according to Plaintiffs, statements categorizing Curtis as a "ringleader" and asserting that he encouraged Haber to have sex with other professors were merely Plaintiffs' interpretations of conduct and events. Additionally, Plaintiffs argue, Haber's statements that the toxic environment at John Jay made her suicidal and "killed [her] spiritually in a way" are merely descriptions of her feelings. Finally, they argue, Cojocaru's social media posts should be considered opinion because they were made in the context of a heated public dispute.

I hold that Counterclaim Defendants sufficiently plead that the vast majority of Plaintiffs' alleged statements are statements of fact, or at worst statements of mixed opinion, that

---

[5] "Pl. Br." refers to Plaintiffs' Motion to Dismiss the Counterclaims Asserted by Defendants Ric Curtis, Barry Spunt and Leonardo Dominguez, ECF No. 82.

10

are subject to a defamatory meaning.  Haber's alleged statements that Curtis encouraged her to have sex with other professors is an objective assertion that is provable as either true or false and whose meaning is readily understandable.  Statements characterizing Counterclaim Defendants' role in the alleged misconduct, describing the Swamp using terms like "deprav[ed]" and "toxic," and comparing John Jay professors to individuals involved in the Jeffrey Epstein case are also actionable.  In context, a reader would take these statements to imply sexual abuse, harassment, and other forms of misconduct that are either described in the *New York Post* article or undisclosed but known to the speakers.  Thus, they are actionable.  *See Restis v. Am. Coalition Against Nuclear Iran, Inc.*, 53 F. Supp. 3d 705, 719 (S.D.N.Y. 2014) ("[O]pinions based on false facts are actionable against a defendant who had knowledge of the falsity or probable falsity of the underlying facts."); *Steinhilber*, 501 N.E.2d at 553 (statements of mixed opinion are actionable because of "the implication that the speaker knows certain facts, unknown to [her] audience, which support his opinion and are detrimental to the person about whom he is speaking"); *see also Biro v. Conde Nast*, 883 F. Supp. 2d 441, 462 (S.D.N.Y. 2012) (declining to dismiss defamation claim based on statement that plaintiff was a "classic con man" because description implied additional facts known to speaker).

        The only alleged statements that are not actionable are Haber's alleged statements that her experience at John Jay made her suicidal and that the professors "killed [her] spiritually in a way."  These statements reflect her reaction to events.  *See Chau v. Lewis*, 935 F. Supp. 2d 644, 662 (S.D.N.Y. 2013) (holding that statement describing personal reaction to encounter is statement of pure opinion that cannot form basis for libel claim).  Additionally, the latter statement is not susceptible to a precise meaning and is not capable of being proven as true or

11

false.  *See Gross*, 623 N.E.2d at 1167 (listing considerations for court in determining whether statement is one of fact or opinion).

### D.  Damages

Counterclaim Defendants sufficiently plead that all the alleged defamatory statements constitute defamation *per se*.  Statements that can constitute defamation *per se* are "statements (i) charging plaintiff with a serious crime; (ii) that tend to injure another in his or her trade, business or profession; (iii) that plaintiff has a loathsome disease; or (iv) imputing unchastity to a woman."  *Liberman v. Gelstein*, 605 N.E.2d 344, 347 (N.Y. 1992).

Many of Plaintiffs' challenged statements concern acts of violence or the sale of drugs.  These statements "charg[e] plaintiff with a serious crime."  *Id.* at 347-48; *see also Weitsman v. Levesque*, No. 3:17-CV-00727, 2018 WL 1990218, at *4 (N.D.N.Y. Apr. 25, 2018) (holding allegations that plaintiff was involved with sale of illegal drugs "clearly constitute" allegations of serious crime); *Mohen v. Stepanov*, 59 A.D.3d 502, 505 (2d Dep't 2009) (assault constitutes serious crime supporting pleading of defamation *per se*).  The remaining statements concern other forms of misconduct toward students or poor academic integrity.  When directed at a group of professors, those statements tend to injure the Counterclaim Defendants in their profession.  *See Kforce, Inc. v. Alden Personnel, Inc.*, 288 F. Supp. 2d 513, 516 (S.D.N.Y. 2003) (statements that tend to a person in his trade, profession, or business "allege a link between a particular profession and a particular disreputable vice of that profession").  Because the Counterclaim Defendants sufficiently plead defamation *per se*, "the law presumes that damages will result, and they need not be alleged or proven."  *Liberman*, 605 N.E.2d at 347-48.

## II. Curtis's Tortious Interference Claim

"Under New York law, the elements of tortious interference with contract are (1) 'the existence of a valid contract between the plaintiff and a third party'; (2) the 'defendant's knowledge of the contract'; (3) the 'defendant's intentional procurement of the third-party's breach of the contract without justification'; (4) 'actual breach of the contract'; and (5) 'damages resulting therefrom.'" *Kirch v. Liberty Media Corp.*, 449 F.3d 388, 401 (2d Cir. 2006) (quoting *Lama Holding Co. v. Smith Barney Inc.*, 668 N.E.2d 1370, 1375 (N.Y. 1996)). To state a claim for tortious interference with business relations, a plaintiff must allege that "(1) there is a business relationship between the plaintiff and a third party; (2) the defendant, knowing of that relationship, intentionally interferes with it; (3) the defendant acts with the sole purpose of harming the plaintiff, or, failing that level of malice, uses dishonest, unfair, or improper means; and (4) the relationship is injured." *Goldhirsh Grp., Inc. v. Alpert*, 107 F.3d 105, 108-09 (2d Cir. 1997).

Curtis sufficiently alleges each element. He claims that he had a contractual and business relationship with CUNY, the terms of which included his appointment as professor, tenure status, teaching privileges, and research funding. He further claims that through Plaintiffs' maliciously fabricated allegations, they caused CUNY to breach the contract by suspending him without notice or an opportunity to be heard, and by instituting termination proceedings. Alleged damages include economic loss and loss of professional opportunities.

Plaintiffs are incorrect that Curtis's tortious interference claim is duplicative of his defamation claims. A tortious interference claim is properly dismissed as duplicative of a defamation claim where all of the alleged injuries in relation to the tortious interference claim arise from the allegedly defamatory statements. *Restis v. Am. Coalition Against Nuclear Iran,*

13

*Inc.*, 53 F. Supp. 3d 705, 725-27 (S.D.N.Y. 2014); *see also Ripka v. County of Madison*, 162 A.D.3d 1371, 1373 (3d Dep't 2018) ("Plaintiff's causes of action for tortious interference with business relations and prima facie tort cannot survive, as they are based on the same substantive facts pleaded with respect to her defamation cause of action and, thus, are duplicative of that claim."). Here, that is not the case. While Curtis's defamation claims are based primarily on Plaintiffs' alleged *New York Post* interviews and social media posts, the tortious interference claim is based primarily on Plaintiffs' alleged statements to CUNY and its investigators.

## CONCLUSION

For the foregoing reasons, Plaintiffs' motion to dismiss Curtis, Dominguez, and Spunts' counterclaims is granted to the limited extent that liability cannot be based on Cojocaru's alleged text messages to her former fiancé or Haber's alleged statements that her experience made her suicidal and killed her spiritually. The motion is denied in all other respects. The Clerk is directed to close the open motion (ECF No. 81). As already scheduled, the parties shall appear for a status conference on July 24, 2020 at 10:00 a.m. to discuss discovery.

SO ORDERED.

Dated: September 28, 2020         /s/ Alvin K. Hellerstein
New York, New York          ALVIN K. HELLERSTEIN
                            United States District Judge